**STYLES v. LOCAL 74, UNITED BROTHER-HOOD OF CARPENTERS & JOINERS OF AMERICA, AFL et al.**

**No. 1177.**

District Court, E. D. Tennessee, S. D.

Oct. 28, 1947.

500

Robert N. Denham, David P. Findling, Winthrop A. Johns and Reeves R. Hilton, all of Washington, D. C., for National Labor Relations Board.

Herbert G. B. King, of Chattanooga, Tenn., for Local 74.

DARR, District Judge.

The petitioner seeks an injunction by virtue of the authority of Section 10(*l*) of the Labor Management Relations Act, 1947, Public Law 101, 80th Congress, Chapter 120, 1st Session, 29 U.S.C.A. § 160(*l*), herein called "the Act".

The respondents have a motion to dismiss the petition upon sundry grounds, among others challenging the constitutionality of the Act. All questions so raised are pretermitted except those hereunder discussed.

The motion admits the truth of the allegations in the petition. The petition discloses a controversy principally between the respondents, Local 74 of the United Brotherhood of Carpenters and Joiners of America, AFL, and Ira A. Watson Company, a mercantile establishment doing business as Watson's Specialty Store, whereby Local 74 has sought to organize into their organization certain employees of the Ira A. Watson Company. The gravamen of the petition is that Local 74 and its agent maintained a secondary boycott against the Ira A. Watson Company in violation of the Act.

The Ira A. Watson Company has proceedings pending before the National Labor Relations Board upon a charge of unfair labor practices by the said Local 74 and its agent, the respondent Henderson.

In accord with the seeming mandate of said Section 10(*l*) of the Act, the petitioner, the Regional Director, has instituted this proceeding for an injunction.

The alleged factual basis upon which relief is sought is found in the petition as follows:

In February 1947, respondent Jack Henderson requested the charging party (Ira A. Watson Company) to execute a closed shop agreement, covering the charging party's installation employees, with Local 74, although Local 74 did not at that time, or any other time, have as members, or represent for the purpose of collective bargaining, any of the charging party's installation employees. When the charging party refused to execute the proposed closed shop agreement, respondents placed a picket in front of its place of business declaring the charging party was unfair to Local 74, and maintained said picket until August 30, 1947.

On or about August 7, 1947, George D. Stanley and B. F. Parker, general contractor, executed an agreement whereby Parker agreed to do certain work, consisting of remodeling and improvements, upon Stanley's residence in Lookout Valley, Chattanooga, Tennessee, including the furnishing of materials and employees. Stanley agreed to pay the costs of materials and the wages of the employees, plus a commission to Parker.

Thereafter, about August 15, Stanley entered into an agreement with the charging party wherein the charging party agreed to furnish and install certain floor and wall coverings at Stanley's residence for the approximate sum of $875. In accordance with said agreement, the employees of the charging party, about August 17, commenced the installation work. At the same time, members of Local 74 were performing work at

Stanley's residence pursuant to the agreement between Stanley and Parker. About August 20, one of the members complained of working with the non-union employees of the charging party but Parker persuaded them to remain at work. The following day, the employees of the charging party, after working a short time were ordered off the job by Parker, acting under pressure by Local 74 and Henderson, because they were not members of Local 74, and Parker also notified Local 74 and Henderson of the action thus taken. The same day, members of Local 74, acting under orders from Jack Henderson as Business Agent, concertedly left their employment at Stanley's residence and refused to perform services therein. That afternoon, Henderson advised Stanley that he had ordered all members of Local 74 to concertedly cease work on Stanley's house for the reason that Henderson would not permit members of Local 74 to work with the non-union employees of the charging party. Henderson further advised Stanley that he would not permit members of Local 74 to return and complete their work unless and until Stanley cancelled his agreement with the charging party, which Stanley refused to do. Respondents have at all times since August 21 refused to permit their members to perform any services at Stanley's residence because of Stanley's refusal to cancel his agreement with the charging party, although Stanley has, through Parker, requested respondents to allow members of Local 74 to return to work.

■ An attentive study has been made of the sundry questions raised and consideration has been given the novelty of the proceedings. This tribunal has no jurisdiction to settle the controversy between the contesting parties. The Congress has seen fit to place jurisdiction with the National Labor Relations Board and thereafter by adequate procedural provisions in the Circuit Court of Appeals and the Supreme Court. The only jurisdiction in this court is for injunctive relief pending the hearing and decision by the National Labor Relations Board. The determination of any of the issues by this court are, therefore, of small significance as concerning the ultimate adjustment of the controversy.

The provisions of the Act concerning the injunction give to the court authority to issue such extraordinary process "as it deems just and proper". Therefore it would seem that the situation should be such as to disclose some immediate urgency of action whereby the rights of a citizen would have temporary protection pending the proceedings of the controversy upon its merits.

■ Be this as it may, I have reached the conclusion that the facts presented in the petition and by the affidavits do not come within the provisions of the Act because all the conduct upon which these facts are based occurred prior to the effective date of the Act.

. The petitioner claims that the order bringing the union men off the Stanley job amounted to a strike and continued as an abiding situation after the Act became effective. The unfair labor practice charged is said to be defined by Section 8(b) (1), (4) (A). Considering the definition therein set out as applicable to the facts charged in the petition, the conduct of the respondents, in my judgment, was past at the time of the effective date of the Act. Certain it is that the Act is entirely prospective in its intentions.

The particular definition of the unfair labor practice as applied to this case provides that an unfair labor practice shall be an action of a labor organization or its agents "to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment * * * to perform any services, where an object thereof is: (A) forcing or requiring any employer * * * or other person * * * to cease doing business with any other person * * *".

These words appear to clearly indicate the affirmative action in striking or failing to perform the services and not a continuation of a condition that was lawfully set up prior to the enactment of the Act. In fact, my judgment is that the whole employment relationship ceased to exist on August 21, 1947, and that when the Act became effective there was no unlawful situation. The whole incident was closed.

502

Also, it appears from the petition that, at the time it was filed, the work at the Stanley home had been completed, both by the Watson Company and that provided for under the Parker contract.

My view is that upon an application for an injunction there must be an existing condition at the time of the application that would warrant the issuance of an injunction as being just and proper. Certainly the question is moot insofar as the Stanley job is concerned. Even if the petitioner's insistence is true in that the actions on August 21, 1947, were all within the law, and that the violation of the Act was the failure of Local 74 and its agent, Henderson, after the Act became effective, to rescind the order requiring the workmen to leave the Stanley job, then there is grave doubt as to whether this debatable question of a violation would be sufficient to indicate a fair anticipation of future violations.

In any event, my judgment is that the factual situation upon which the application is based sets up lawful conduct and therefore there can be no inference that this would indicate a future action of unlawful conduct.

Being of the opinion as herein set out, I have concluded that this is not a case under the Act and that I should not direct the issuance of an injunction pending the action of the Board.

Therefore, the application by the petitioner for an injunction is denied.

Order accordingly.