## LOCAL 74, UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, A. F. OF L., ET AL. v. NATIONAL LABOR RELATIONS BOARD.

No. 85.   Argued February 26, 1951.—Decided June 4, 1951.

*Charles H. Tuttle* argued the cause for petitioners. With him on the brief was *Frank X. Ward.*

*Mozart G. Ratner* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, David P. Findling* and *Dominick L. Manoli.*

*Clif Langsdale* filed a brief for the United Brotherhood of Carpenters & Joiners of America, A. F. of L., et al., as *amici curiae,* supporting petitioners.

MR. JUSTICE BURTON delivered the opinion of the Court.

This is a companion case to No. 393, *Labor Board* v. *Denver Building Trades Council* (the *Denver* case), *ante,* p. 675, and No. 108, *International Brotherhood of Electrical Workers* v. *Labor Board* (the *Greenwich* case), *ante,* p. 694.

The principal question is whether, under the following circumstances, a union engaged in an unfair labor practice within the meaning of § 8 (b) (4) (A) of the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. § 151, as amended by the Labor Management Relations Act, 1947:[1] On the day before the effective date of that amendment, the union ordered its members, who were working on a dwelling renovation project, to engage in a strike, where an object thereof was to force the owner of the dwelling to cancel a contract for the installation of wall and floor coverings; and then for several days, on and

---

[1] 61 Stat. 140–141, 29 U. S. C. (Supp. III) § 158 (b) (4) (A). For text see *Labor Board* v. *Denver Building Trades Council, ante,* p. 677, note 1.

after the effective date of the amendment, the strike was continued under the same conditions which created it and for the same objective. For the reasons hereafter stated, we hold that an unfair labor practice was engaged in on and after the effective date of the amendment.

For some years before March, 1947, Ira A. Watson Company, a Rhode Island corporation (here called Watson's), operated a general retail store in Chattanooga, Tennessee, including a department for the sale and installation of wall and floor coverings. Since that time Watson's has operated a specialty store devoted to those activities. At about the same time, Local 74, United Brotherhood of Carpenters and Joiners of America, A. F. of L. (here called the union), and its business agent, Jack Henderson (respectively the petitioners in the instant case), asked Watson's to enter into a closed-shop agreement with the union recognizing it as the bargaining agent of Watson's installation employees. None of its employees were members of the union and Watson's declined to enter the agreement. Thereupon, from the latter part of March until about August 28, 1947, petitioners maintained a picket in front of Watson's store carrying a placard. This announced, over the name of the union, that Watson's was "unfair to organized labor" or later "This store employs non-union labor." Watson's sometimes sold wall or floor coverings without installing them and, at other times, it insisted upon installing such coverings as a condition of their sale. When the installations were made by Watson's, the work was done by nonunion men.

August 7, 1947, George D. Stanley, who owned a dwelling near Chattanooga, contracted with D. F. Parker to improve and renovate it. Parker was to furnish and supervise the workmen and select the materials. Stanley was to pay the wages of the workmen, the cost of the materials, and a ten per cent commission to Parker on both.

Parker was a member of the union and he hired union members to do the carpentry work. If the wall and floor coverings desired by Stanley had been available in Chattanooga elsewhere than at Watson's, Parker would have purchased them from such source and would have employed union men to install them. However, neither Parker nor Stanley could find such coverings in Chattanooga except at Watson's and Watson's insisted on installing them as a condition of their sale. Although knowing that Watson's would use nonunion men to make the installations, Stanley, with Parker's implied consent, contracted with Watson's for the purchase and installation of the coverings. Watson's began its installation Sunday, August 17, when there were no other workmen present. Monday and Tuesday, apparently with Parker's approval, the installation continued during regular working hours. Wednesday, two of the union carpenters stopped work for half an hour because of the presence on the job of the nonunion installation workers. Parker, however, induced the carpenters to resume work. This situation came to the attention of the union and, on Thursday, August 21, Henderson came to the project and told the four union carpenters who were working there that they could not continue to work with nonunion men or where nonunion men were employed. At that hour, none of Watson's men were present but the installation of coverings contracted for by Stanley with Watson's had not been completed. The union men finished their day's work but, in compliance with the instructions thus issued by petitioners, did not return on the following days. Watson's men returned and completed their work by August 28, and the entire renovation was finished by the end of August. The unfinished carpentry work was done by two of the four union men who had been on the job and who returned without the knowledge or

consent of petitioners. On August 22, 1947, § 8 (b) (4) (A) took effect.[2]

Watson's promptly filed a charge with the National Labor Relations Board based upon the continuance of the above strike by petitioners on and after August 22. The Regional Director issued a complaint charging the union and Henderson with engaging in an unfair labor practice as defined in § 8 (b) (4) (A).[3] Pursuant to § 10 (1),[4] the Regional Director petitioned the United States District Court for the Eastern District of Tennessee for injunctive relief. This relief was denied on the ground that the conduct complained of took place before August 22 and was at that time lawful. 74 F. Supp. 499.

After hearings before an examiner, the Board, with one member dissenting, affirmed the rulings of its examiner, attached his intermediate report to its decision, 80 N. L. R. B. 533, 540, and adopted his findings, conclusions and recommendations with additions and modifications. It ordered the union and Henderson to—

"Cease and desist from engaging in or inducing the members of Local 74 to engage in a strike or a concerted refusal in the course of their employment to perform services for any employer, where an object thereof is to require any employer or other person to cease doing business with Ira A. Watson, doing business as Watson's Specialty Store." *Id.*, at 539.

The dissent was on the ground that the effect of the actions complained of upon interstate commerce was so

---

[2] The Labor Management Relations Act, 1947, was enacted into law June 23, 1947, but Title I, containing § 8 (b) (4) (A), took effect 60 days later. 61 Stat. 152, 162, 29 U. S. C. (Supp. III), note following § 151.

[3] The complaint originally also charged violations of § 8 (b) (1) (A) but the Board dismissed those allegations and they are not before us.

[4] 61 Stat. 149–150, 29 U. S. C. (Supp. III) § 160 (*l*). For text see *Labor Board v. Denver Building Trades Council, ante,* p. 682, note 10.

remote and insubstantial and the controversy was so local in character that it was undesirable for the Board to exercise federal power in relation to it. *Id.*, at 540. On a review under § 10 (e),[5] the Court of Appeals for the Sixth Circuit ordered enforcement of the order. 181 F. 2d 126. We granted certiorari. 340 U. S. 902. See *Labor Board* v. *Denver Building Trades Council, ante,* at p. 681.

1. Petitioners contest the jurisdiction of the Board on the ground of the insufficiency of the effect of the actions complained of upon interstate commerce. We conclude that the findings in the intermediate report, adopted by the Board and accepted by the court below, are sufficient to sustain the Board's jurisdiction. *Denver* case, *ante,* at pp. 683–685. From March to September, 1947, Watson's purchased about $93,000 worth of goods. Thirty-three percent was shipped to it in interstate business. Thirty percent more had been manufactured outside of Tennessee. Watson's sales and installation jobs came to about $100,000 of which eight percent represented sales and installations outside of the State. The Board also referred to the fact that Watson's operated a system of 26 or 27 retail stores in seven different states, of which the Chattanooga store apparently was an integral part.

2. The complaint was not against the picketing at Watson's store from March to August 28, 1947. See *Labor Board* v. *International Rice Milling Co., ante,* p. 665. The complaint was directed against petitioners' extension of their activities to the Stanley project by there ordering a strike, or concerted cessation of work, on the part of Stanley's union carpenters[6] with an object of forcing Stanley to cancel his installation contract with Watson's.

---

[5] 61 Stat. 147–148, 29 U. S. C. (Supp. III) § 160 (e).

[6] The examiner expressed doubt as to whether the carpenters were employees of Parker or of Stanley but decided to assume that they were employees of Stanley. 80 N. L. R. B. at 544, n. 12.

Section 8 (c) [7] is not applicable. This strike was ordered by Henderson in person. The union and he both engaged in and ordered the strike. The carpenters as individual employees are not charged with an unfair labor practice. The charge is confined to the actions of the labor organization and its agent in engaging in, ordering and continuing a strike for a proscribed object after Congress had made such conduct an unfair labor practice.

3. As determined in the *Denver* case, it is enough that one of the objects of the action complained of was to force Stanley to cancel Watson's contract. It does not immunize such action from § 8 (b) (4) (A) to show that it also had as an object the enforcement of a rule of the union that its members should not work on a project on which nonunion men were employed.[8] The statute did not require the individual carpenters to remain on this job. It did, however, make it an unfair labor practice for the union or its agent to engage in a strike, as they did here, when an object of doing so was to force the project owner to cancel his installation contract with Watson's.

4. Even assuming that, if petitioners had engaged in such a strike or had induced the union carpenters to take part in it on and after August 22, 1947, it would have been an unfair labor practice under the new amendment,

---

[7] 61 Stat. 142, 29 U. S. C. (Supp. III) § 158 (c). For text see the *Denver* case, *ante*, p. 690, note 20.

[8] The examiner found that Henderson testified credibly that this rule applied whether or not the nonunion men were physically present at the moment. It was enough that nonunion men were employed on the project. Henderson, therefore, applied the rule here because, although Watson's men were absent from the project on August 21, 1947, Watson's installation contract was not yet complete, and it was clear that its completion would mean the return of nonunion men to the project. Henderson testified also that the rule applied even to the employment of nonunion labor which did not come under the jurisdiction of Local 74. 80 N. L. R. B. at 546, 553, n. 33.

petitioners contend that their actions all took place before August 22, and that they did nothing on or after that date which is proscribed by § 8 (b) (4) (A).[9] The answer turns on what actually took place on and after August 22. As to that the Board concluded:

"Nor is it material . . . that the labor dispute had its origin before the effective date of the amended Act, for we are convinced that it was continued and prolonged after the effective date by the very same factors which originally created it and for the same original objective which, as found above, Section 8 (b) (4) (A) declares unlawful. Thus, at material times both before and after the effective date of the amendments . . . (2) the Respondents' [here petitioners] strike order, which admittedly was never rescinded, was outstanding and effectively prevented the carpenters from officially working on the job as long as Watson's men were also working; . . . ." 80 N. L. R. B. at 537–538.[10]

We agree with the court below in sustaining that conclusion.[11]

---

[9] In the proceedings for an injunction under § 10 (l) the District Court so held. Its decision, however, was based upon the affidavits before it rather than upon the record before the Board, and its conclusion did not bind the Board in the proceeding on the merits. 74 F. Supp. 499, and see *Labor Board* v. *Denver Building Trades Council, ante,* pp. 681–683.

[10] Petitioners gain nothing from § 102: "No provision of this title [which includes § 8 (b) (4) (A)] shall be deemed to make an unfair labor practice any act which was performed prior to the date of the enactment of this Act [June 23, 1947] which did not constitute an unfair labor practice prior thereto . . . ." 61 Stat. 152, 29 U. S. C. (Supp. III), note following § 158.

[11] For a comparable result relating to a labor dispute which commenced before the taking effect of the National Labor Relations Act of 1935, see *Jeffery-De Witt Insulator Co.* v. *Labor Board,* 91 F. 2d 134.

5. We have considered the remaining questions raised by petitioners, based on constitutional or other grounds, and have resolved them in favor of sustaining the Board and the court below. This case has not been rendered moot by the completion of the renovation project. The complaint was against petitioners' use of secondary pressure upon Watson's in a manner proscribed by the statute. The use of such pressure on this renovation project was merely a sample of what might be repeated elsewhere if not prohibited. The underlying dispute between petitioners and Watson's has not been shown to have been resolved.

The judgment of the Court of Appeals accordingly is

*Affirmed.*

MR. JUSTICE REED, MR. JUSTICE DOUGLAS and MR. JUSTICE JACKSON are of the opinion that the judgment should be reversed.