Ross M. MADDEN, Regional Director of the Thirteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

GENERAL TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS UNION LOCAL NO. 126; Chauffeurs, Teamsters and Helpers "General" Local Union No. 200, and Central States Drivers Council, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, Respondents.

No. 56-C-59.

United States District Court
E. D. Wisconsin.

May 25, 1956.

Sidney D. Goldberg, National Labor Relations Board, Washington, D. C., for petitioner.

David L. Uelmen, Padway, Goldberg & Previant, Milwaukee, Wis., for respondents.

John G. Kamps, Milwaukee, Wis., for Rueping Leather Co., charging party.

GRUBB, District Judge.

This matter is before the Court on the petition of the Regional Director of the N.L.R.B. for an injunction under Section 10(*l*) of the National Labor Relations Act as amended 29 U.S.C.A. § 160(*l*). The petition charges that in March of 1956 Fred Rueping Leather Company (herein called Rueping) filed a charge with the Board alleging that the respondents had engaged in and are engaging in unfair labor practices within the meaning of Section 8(b) (4) (A) of the Act, 29 U.S.C.A. § 158(b) (4) (A). It recites that after investigation the petitioner "has reasonable cause to believe" that the charge is true and that a complaint of the Board should issue against the respondents pursuant to Section 10 (b) of the Act. The petition then sets forth alleged facts which petitioner charges resulted in violation of Section 8(b) (4) (A) of the Act affecting interstate commerce within the meaning of the Act. These alleged actions and conduct were in connection with employees of the Northern Transportation Company (herein called Northern) and Central Wisconsin Motor Transport Company (herein called Central), common carriers engaged in hauling freight by motor vehicle under Interstate Commerce Commission license. It alleges that since about March 1, 1956, respondents have ordered, directed, instructed and appealed to employees of Northern and Central and other employers not to accept, deliver, pick up, handle, transport or work on freight or products consigned to or by Rueping. It alleges that on or about March 29, 1956, respondent Local No. 200 called a strike of Northern's employees because of the handling of Rueping products. That as a result of respondent's act and conduct Northern and other employers ceased handling such products. It then again sets forth allegations alleging that the respondents violated the provisions of the labor act in question and will continue to do so unless restrained. It prays for an order directing respondents to show cause why an injunction should not issue enjoining and restraining respondents and officers, representatives, agents and others connected with respondents pending final adjudication by the Board from doing acts proscribed by the labor relations law. On this petition an order to show cause was issued. Respondents answered denying the material allegations of the petition, hearing was had, evidence was submitted by the parties, briefs were exchanged, filed and considered and oral arguments had.

One of the principal defenses relied upon is Article 9 of the contract, Exhibit 4, the so-called "hot cargo clause." This clause appears to be standard in the contracts negotiated by or through the Central States Drivers Council. In general it provides that it is not violation of the agreement if employees refuse to go through picket lines or refuse to handle "unfair goods." The union and its members reserve the right to refuse to handle such goods, to accept freight from, make pick-ups from or deliveries to establishments where picket lines or strikes exist. The term "unfair goods" is defined. The article in question provides in substance that the insistence by an employer that his employees handle "unfair goods" after they have elected not to, and if such refusal has been approved in writing by the responsible officials of Central States Drivers Council, "shall be sufficient cause for an immediate strike of all such employer's operations. * * *" without going through grievance procedure set forth in the contract.

The material part of the statute in issue is Section 8(b):

"It shall be an unfair labor practice for a labor organization or its agents * * * (4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use. * * * handle or work on any goods, articles, materials, or

commodities or to perform any services, where *an* object thereof is: (A) forcing or requiring any employer or self-employed person * * * or any employer or other person to cease * * * handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person". (Emphasis supplied.)

The question is immediately presented as to the validity of Article 9 where it conflicts with, or purports to authorize the union to violate, the provisions of the statute above quoted.

■ Congress established the National Labor Relations Board and gave it great powers. Its decisions, either factual or legal, are not subject to review by the District Courts. The Courts of Appeal are given a limited right to review the findings and orders of the Board.

The decisions of the Board defining the relationship between "hot cargo" clauses and Section 8(b) (4) (A) have not always been consistent. The most recent decisions are to the effect that the law must be enforced regardless of contract provisions which may conflict with it or conflicting by-laws or regulations of the union. Local 74, United Brotherhood of Carpenters & Joiners of America, A. F. of L. v. N. L. R. B., 1951, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309; Joliet Contractors Ass'n v. N. L. R. B., 7 Cir., 1953, 202 F.2d 606. This principle has been clearly set forth in the Sand Door and Plywood Company decision, 113 N.L.R.B. 123, wherein the Board stated:

"However, we do not agree that unions, which are parties to such contracts, may approach *employees* of the contracting employer * * with immunity from the sanctions of Section 8(b) (4) (A). In our opinion, such conduct constitutes inducement or encouragement of employees to engage in a concerted refusal to handle goods for an object proscribed by Section 8(b) (4) (A) no less than it does in the absence of such agreement. Such conduct is contrary to the express language of the statute, and therefore cannot be validated by the existence of a contract containing a 'hot cargo' clause. In enacting Section 8(b) (4) (A), Congress intended to protect the public from strikes or concerted refusals interrupting the flow of commerce at points removed from primary labor-management disputes."

That opinion was reiterated in the American Iron and Machine case, 115 N.L. R.B. 121:

"Thus, while Section 8(b) (4) (A) does not forbid the execution of a hot cargo clause or a union's enforcement thereof by appeals to the employer to honor his contract, the Act does, in our opinion, preclude enforcement of such clause by appeals to employees, and this is so whether or not the employer acquiesces in the union's demand that the employees refuse to handle 'hot' goods."

None of these recent decisions so far as the briefs of counsel indicate or so far as the Court has been able to find have been reversed by the Courts of Appeal.

A situation is presented where the Court is asked by the Board through its Regional Director to enter an injunction pending a determination by the Board itself preventing respondents from violating the statute above referred to. Respondents are legally obligated to respect this statute. No legal harm can come to the respondents by granting the petition if the findings and order are narrow enough so that none of respondents' valid legal rights are interfered with. The ultimate determination on the merits must be made by the Board. Such determination is subject to review in the Court of Appeals.

■ With reference to the respondent, Central States Drivers Council, the evidence shows that it authorized the

locals involved to invoke and attempt to enforce the "hot cargo clause." This authorization was by telegram on September 9, 1955. Thereafter, so far as the evidence shows, the Central States Drivers Council took no affirmative action. It raises the six months limitation defense. The authorization on its face is a continuing authorization. The evidence fails to satisfy the Court that up to the time of the hearing the respondent, Central States Drivers Council, had itself *directly* violated the statute or had itself *directly* induced or encouraged *employees* in violation of the statute. Petitioner makes the legal claim that the action of the respondent local unions is part of a "joint venture" or "joint action" with the Central States Drivers Council. As a practical matter that may be true as a result of its authorization to them. However, in the absence of evidence that it itself *directly* violated the statute, the Court believes that it should deny the petition as far as Central States Drivers Council is concerned.

The Court of Appeals (7th) in Joliet Contractors Ass'n v. N. L. R. B., supra [202 F.2d 608], stated the following:

"Regardless of the congressional purpose or the objective sought to be accomplished by the legislation, it is the law which Congress finally enacted by which the merits of the controversy must be determined. * * *

"More specifically, the objective sought to be accomplished by the union, while material, is alone not sufficient; it only becomes a violation when achieved in the manner specified, that is, by engaging in a strike or by inducing * * *. The objective must be accomplished by the specific means which the section defines and not otherwise."

■ As to Local No. 200, the evidence is clear that the strike which it called on March 28, 1956, had at least as one of its objects and certainly one of its effects the inducement and the encouragement of employees of Northern to strike and to engage in a concerted refusal in the course of their employment to handle products of or merchandise for Rueping. The Court will grant the restraining order as to Local No. 200.

■ With reference to Local No. 126 and Olsen Transportation Company, the claim is made that Wetzel's only communication was made to a single employee, Ziegler. The evidence showed that Wetzel, secretary-treasurer of Local No. 126, threatened to strike Olsen Transportation, that he asked to speak to *one* of the men on the dock and that he told Ziegler, an employee, over the telephone that he "better not touch that load" and that "they better not handle" these products. There was testimony that the men were afraid of the union. This is a conclusion of the witness and strictly speaking may not be competent and binding on the Court.

Wetzel told Clark, president of Central Wisconsin Motor Transport Company, that he would see to it that the men on the company's Chicago dock would cease to handle Rueping merchandise. The circumstances are such that the Court feels that there is reasonable cause to believe that Local No. 126 violated the statute.

While there is testimony that there has been some Rueping merchandise moved, the occurrences in question have resulted in a great reduction in the amount being handled. It is also clear that the Olsen Transportation employees have reason to believe that a strike would be called if even the superintending or management employees handled Rueping goods. This fear, or threat of a strike being called, does, in the opinion of the N.L.R.B. in which this Court concurs, induce and encourage employees not only not to handle Rueping goods themselves but to take steps to prevent supervising personnel from handling such goods.

Counsel for the respondents made objection to the proposed form of order requested by the petitioner. They have also asked to be heard in connection with the findings although they did not file

specific objections to the requested findings when invited by the Court to do so. The Court feels that the decision and the findings and order should not be further delayed. The Court will enter its findings and sign an order which will be effective at once. The parties may have ten days from the date hereof in which to file specific objections to the form of the findings or form of the injunction. If such objections are filed by either party in connection with the motion to modify the findings or injunction with supporting briefs, the Court will set such motions for hearing at an early date.