**John F. LE BUS, Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

**v.**

**SEAFARERS' INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC AND GULF DISTRICT, HARBOR AND INLAND WATERWAYS DIVISION, AFL–CIO, Respondent.**

**Civ. A. No. 7240.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 2, 1957.

Charles M. Paschal, Jr., New Orleans, La., for plaintiff.

C. Paul Barker, Wilfred H. Boudreaux, Jr., New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

This matter came on to be heard upon the verified petition of John F. LeBus, Regional Director of the Fifteenth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended 29 U.S.C.A. § 160 (*l*) (herein called the Act), pending the final disposition of the matters involved pending before the Board, and upon issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on November 13, 1957. All parties were afforded full opportunity to be heard, to present evidence bearing on the issues, and to argue and submit briefs on the evidence and the law. The Court has fully considered the petition, answers, evidence, briefs, and arguments of counsel. Upon the entire record, the Court makes the following:

Findings of Fact

1. Petitioner is Regional Director of the Fifteenth Region of the Board, an agency of the United States and filed this petition for and on behalf of the Board.

2. Respondent, Seafarers' International Union of North America, Atlantic and Gulf District, Harbor and Inland Waterways Division, AFL-CIO, an unin-

corporated association, is a labor organization within the meaning of Sections 2(5), 8(b) and 10($l$) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160($l$), and is engaged within this judicial district in promoting and protecting the interests of its employee members and in transacting business.

3. On or about October 14, 1957, Superior Derrick Corporation (herein called Superior), pursuant to the provisions of the Act, filed an amended charge with the Board to a charge originally filed on September 23, 1957, said amended charge alleging that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b), subsections (4) (A) and (4)(B) of the Act.

4. Said charge and amended charge were referred to petitioner as Regional Director of the Fifteenth Region of the Board for investigation, and were investigated by petitioner and under his supervision.

5. There is, and petitioner has, reasonable cause to believe that:

(a) Superior, a Louisiana corporation with its office at New Orleans, is engaged, inter alia, in the business of operating floating derricks in and about the Port of New Orleans. During the past year, Superior performed services of a value in excess of $100,000 for employers engaged in interstate and foreign commerce.

(b) Since on or about July 9, 1957, respondent has demanded that Superior recognize and bargain with it as the representative of Superior's employees.

(c) At no time material herein has respondent been certified as the representative of Superior's employees under the provisions of Section 9 of the Act, 29 U.S.C.A. § 159.

(d) Superior, in addition to a plant site in Myrtle Grove, Louisiana, owns and operates two floating derricks manned by its employees engaged in the loading and unloading of vessels at wharfside in the Port of New Orleans. The employees of Superior employed on these derricks do not report for work at the plant site in Myrtle Grove. They report directly to the derricks wherever they may be located along the wharves in the Port of New Orleans.

(e) On September 22, 23 and 24, 1957, respondent picketed in the immediate vicinity of one of the floating derricks belonging to Superior, while said derrick was located at the Southern Pacific Railway Company's wharf in Gretna, Louisiana, and while the derrick was unloading bauxite from the vessel SS Alcoa Prospector, belonging to Alcoa Steamship Company, Inc., to railway cars, which were being transported from the dock site by Southern Pacific Railway Company; during this picketing, the employees of Alcoa Steamship Company continued to work, without any interruption or stoppage, on and in the vicinity of the vessel; the employees of Southern Pacific Railway Company on three occasions declined to operate the train at the situs of the vessel while the picketing was going on, even though the pickets were never placed across the right-of-way of the railroad; on two of these three occasions, supervisory personnel of Southern Pacific Railway Company operated the trains onto and off the dock site; during this picketing, Superior's employees aboard the derrick continued to work regularly and without any stoppage or interruption, except for the period from noon, September 22, to 8 a. m., September 23, 1957 and the period from early morning September 24 to about noon September 24, 1957, during which times the employees were temporarily moved by Superior from the derrick. The picketing continued during the period no employees of Superior were aboard the derrick.

(f) On September 22, 1957, a train crew of employees of Southern Pacific approached the picket line with a locomotive to remove some loaded cars, stopped and conversed with the pickets and were told by a representative of respondent that the picket line was "legal." While the train crew removed the loaded cars that were then located on the dock,

they stated that they would not perform such work in the future while the picketing continued. As a result of the continued picketing, the train crewmen subsequently refused to place empty cars on the dock or to remove loaded cars from the Southern Pacific dock. Such work was performed by administrative personnel of Southern Pacific during the existence of the picket line. On the early morning of September 23, the train crew returned to remove loaded cars from the dock, again saw the pickets, stopped the engine, and asked the pickets if the picket line was still in progress. Although no employees of Superior were at work on the derricks or the dock at this time, or otherwise located on the premises, the pickets advised the railroad crewmen that the picket line was still in progress. As a result, the train crew again refused to remove the cars from the Southern Pacific dock or to place empty cars in their place.

(g) On September 28, 29 and 30, 1957, respondent picketed a floating derrick, belonging to and operated by Superior while said derrick was in the process of loading the vessel SS Lodie Guatemala at the Galvez Street wharf in the Port of New Orleans; this picketing was conducted by respondent from 8 a. m. to 5 p. m. on each of the three days mentioned; during this picketing the crew members and the employees employed aboard the vessel continued to work and to go back and forth from the vessel without any stoppage or interruption; additionally, during this picketing, repair and maintenance employees of Dixie Machine, Welding & Metal Works, Inc., employed in repair and maintenance work aboard the vessel, continued to work and to go back and forth aboard the vessel without any stoppage or interruption.

(h) On October 10, 1957, Superior was engaged in a loading operation at the Dumaine Street wharf in New Orleans for Texla Stevedores, Inc. (herein called Texla). The job consisted of loading steel plates from a barge onto the SS Kikutama Maru. Texla's employees, members of Locals 1418 and 1419, International Longshoremen's Association (herein called ILA), were at the same time engaged in longshore operations. At about 1 p. m., respondent commenced picketing in front of the gangplank of the SS Kikutama Maru. In the course of a discussion between delegates of the ILA and Thomas Gould, respondent's representative, Gould admittedly told the delegates, in the presence of numerous employees of Texla: "I am not telling you you can't go to work; I am not telling you you can go to work." Petitioner's witnesses claim in addition that Gould said: "Legitimate unions respect other unions' picket lines" and words of similar import. As a result, Texla's employees refrained from working and continued to their work stoppage until about 2:30 p. m., at which time they went back to work pursuant to instructions from their ILA delegates.

█ (i) By its picketing and other acts and conduct described in Findings of Fact 5(d), (e), (f), (g) and (h) above, respondent has engaged in, and has induced and encouraged employees of Alcoa, Southern Pacific, Texla, Kikutama Maru and of other employers to engage in, strikes or concerted refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities, or to perform services.

(j) Objects of respondent's acts and conduct set forth in Findings of Fact 5 (d), (e), (f), (g) and (h) above, were and are: (1) to force or require General Chemical, Southern Pacific, and other employers and persons, to cease doing business with Superior; and (2) to force or require Superior to recognize or bargain with respondent as the collective bargaining representative of Superior's employees, although respondent has not been certified as the representative of such employees in accordance with the provisions of Section 9 of the Act.

6. The acts and conduct of respondent set forth in Findings of Fact 5(d), (e), (f), (g), (h), (i) and (j) above,

occurring in connection with the operations of Superior, have a close, intimate and substantial relation to trade, traffic and commerce among the several States, and tend to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

7. It may be fairly anticipated that, unless enjoined, respondent will continue or repeat its acts and conduct hereinabove set forth in Findings of Fact 5 (d), (e), (f), (g), (h), (i), and (j) above, or similar or like acts and conduct.

## Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this proceeding and is empowered under Section 10(l) of the Act to grant injunctive relief. Respondent is a labor organization within the meaning of Sections 2(5), 8 (b) and 10(l) of the Act.

2. The situs of the dispute between the respondent and the primary employer is on that employer's derricks floating in the Mississippi River alongside vessels docked at the wharves of the secondary employer. Under the circumstances, "The right of neither the union to picket nor of the secondary employer to be free from picketing can be absolute. The enmeshing of premises and situs qualifies both rights." In that situation "Picketing of the premises of the secondary employer is primary if it meets the following conditions; (a) The picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs;[1] (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer." Moore Dry Dock Company, 92 N.L.R.B. 547.[2]

3. Since the picketing and the conduct of respondent have not conformed to the criteria stated above, there is, and petitioner has, reasonable cause to believe that:

(a) Superior is engaged in commerce within the meaning of Section 2, subsections (6) and (7) of the Act.

(b) Respondent has engaged in unfair labor practices within the meaning of Section 8(b), subsections (4) (A) and (4) (B) of the Act, and affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

---

[1] The fact that employees of the primary employer are temporarily absent from the situs, in this case the derricks, does not necessarily mean that the primary employer is not engaged in its normal business at the situs. Unquestionably, an employer is still engaged in its normal business at its plant on land even though all employees are temporarily away therefrom. Certainly no one would question the right of the union to picket the plant during off hours when no employees are present. Floating derricks, for the men who work on them, become in effect the plant of their employer. And the right to picket this situs, even if the temporary absence of employees, would seem to be preserved under the doctrine of Moore Dry Dock. See Local 618, Petroleum and Allied Industries Employees Union v. N. L. R. B., 8 Cir., 249 F.2d 332; Intermediate Report, Seafarers' International Union of North America and Salt Dome Production Company, Case No. 15-CC-59, N.L.R.B.

[2] See also N. L. R. B. v. Denver Building & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Local 74, United Brotherhood of Carpenters v. N. L. R. B., 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309; N. L. R. B. v. Truck Drivers and Helpers, etc., 5 Cir., 228 F.2d 791; N. L. R. B. v. Associated Musicians, 2 Cir., 226 F.2d 900; N. L. R. B. v. Denver Building and Trades Council, 10 Cir., 219 F.2d 870; Piezonki, d/b/a Stover Steel Service v. N. L. R. B., 4 Cir., 219 F.2d 879; N. L. R. B. v. Local 55, United Brotherhood of Carpenters, 10 Cir., 218 F.2d 226; N. L. R. B. v. Denver Building & Construction Trades Council, 10 Cir., 193 F.2d 421; United Brotherhood of Carpenters v. Sperry, 10 Cir., 170 F.2d 863.

4. To preserve the issues for the determination of the Board as provided in the Act, it is appropriate, just and proper, that pending the final disposition by the Board of the matters involved herein, respondent, its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission of the acts and conduct, which amount to unfair labor practices within the meaning of Section 8(b), subsections (4) (A) and (4) (B) of the Act.

## Temporary Injunction

This cause came on to be heard upon the verified petition of John F. LeBus, Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on behalf of said Board, for an injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, pending final disposition of the matters involved herein pending before said Board, and upon the return of an order to show cause why an injunction should not be granted as prayed for in said petition. All parties were afforded full opportunity to be heard and to present relevant evidence. The Court has considered the pleadings, evidence, briefs, arguments of counsel and the entire record in this proceeding, and has made and filed its Findings of Fact and Conclusions of Law. It appearing therefrom to the satisfaction of the Court that there is reasonable cause to believe that respondent has engaged in acts and conduct in violation of Section 8(b), subsections (4) (A) and (4) (B) of the aforesaid Act, affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, and that such acts and conduct will be repeated or continued unless enjoined,

Now therefore, upon the entire record, it is

Ordered, Adjudged and Decreed that pending the final disposition of the matters involved herein pending before the National Labor Relations Board, respondent, Seafarers' International Union of North America, Atlantic and Gulf District, Harbor and Inland Waterways Division, AFL-CIO, its officers, agents, representatives, servants, employees, attorneys and all members and persons acting in concert or participation with it or them be, and they hereby are, enjoined and restrained from:

By any means, including picketing, orders, directions, instructions, requests, appeals, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging the employees of Alcoa Steamship Lines, Southern Pacific Railroad Company, Texla Stevedores, Inc., SS Kikutama Maru, or of any other employer, to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (1) to force or require General Chemical Corporation, Southern Pacific Railroad Company, or any other employer or person to cease doing business with Superior Derrick Corporation; or (2) to force or require Superior Derrick Corporation to recognize or bargain with respondent, or any other labor organization, as the collective bargaining representative of any of the employees of Superior Derrick Corporation, unless respondent, or such other labor organization, has been certified by the Board as the representative of such employees in accordance with the provisions of Section 9 of the Act.

This decree is not intended to prevent respondent from engaging in picketing in the vicinity of the premises of the secondary employer in suit if such picketing meets the following conditions: (a) The picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs; (c) the picketing is limited to places reasonably close to the location of the

# 516

situs; and (d) the picketing discloses clearly that the dispute is with the primary employer. Nor is this decree intended to prevent picketing conforming to these conditions at the situs of the dispute merely because employees of the primary employer are temporarily absent therefrom.