OPINION & ORDER
PER CURIAM.
This matter is before the Court on appeal from the denial of the motion of the plaintiff-Appellant, Wayne Ducheneaux, for a preliminary injunction seeking to enjoin the swearing in of Gregg Bourland, a non-party to this proceeding, as Chairman of the Cheyenne River Sioux Tribe on account of alleged election irregularities. Because this Court finds that the appeal in the proceeding, but not the case, is moot, it dismisses the appeal and directs the Tribal Court to proceed with the case in a fair and expeditious manner.
Facts
Appellant, Wayne Ducheneaux, ran for Tribal Council Chairman of the Cheyenne River Sioux Tribe (CRST) in the tribal election conducted on November 3, 1998. After the completion of its official canvass of the vote, the CRST Election Board (Board) declared that Gregg Bourland had won the contest by 16 votes over the Appellant. Appellant filed a timely protest and requested a recount of the votes and a new election based in part on fraud. The Board determined that fraud had not been established and denied the request for a new election, but granted the request for a recount. The recount confirmed that Gregg Bourland had won and that the *41 Appellant had lost. Accordingly, the Board thereafter certified Gregg Bourland as the winner of the election.
On November 25, 1998, the Appellant filed a complaint in the CRST Tribal Court against the Board and its various members, alleging fraud and other election irregularities. Along with the complaint, Appellant moved for both a temporary restraining order (TRO) and a preliminary injunction. The requests for a TRO and a preliminary injunction sought only one type of relief—to restrain the seating and swearing in of the candidate certified as receiving the highest number of votes, Gregg Bourland. The Complaint, but not the TRO or preliminary injunction requests, sought to have the election declared null and void and a new election held in its place.
The Tribal Court issued a TRO barring the Tribal Council from seating Gregg Bourland as Chairman until a hearing could be held in the matter, which was scheduled for December 1, 1998. After hearing, the CRST Tribal Court denied the Appellant’s request for a preliminary injunction and his motion for a stay of the court’s order pending appeal. Immediately after the stay was denied and before this Court could act in the matter, Gregg Bourland was sworn in and seated as tribal Chairman. The Appellant took an immediate appeal. This appeal involves only the denial of the motion for preliminary injunction sought to prevent Gregg Bour-land from assuming office. The complaint in this matter is still pending before the tribal trial court.
After the Appellant had already filed his thoi'ough and thoughtful initial brief in this appeal,[1] the Respondents filed on March 4, 1999, a somewhat belated (but nevertheless timely) motion to dismiss the appeal as moot. After full briefing of the mootness issue, the Court on its own motion decided to hear oral argument in the matter, given the importance of the case to the people of the Cheyenne River Sioux Tribe. Oral argument on the motion was heard on May 7, 1999.
Discussion
Critical to the Court’s understanding of this case is the fact that the Appellant’s motion for preliminary injunction, the denial of which is the subject of this appeal, sought only to restrain the swearing in and seating of Gregg Bourland as Chairman of the Cheyenne River Sioux Tribe. While the complaint filed by the Plaintiff-Appellant sought other forms of relief, including a. new election, those matter’s were not before the Tribal Court in his request for’ a preliminary injunction and, therefore, are not properly before this Court at this time. Rather, these requests are still pending in the CRST Tribal Court and nothing in this Court’s decision today should be understood to reflect any views on the underlying complaint in this case, which the Tribal Court will still need to address.
Unlike the Article III of the United States Constitution, there is nothing in the Constitution and By-Laws of the Cheyenne River Sioux Tribe that limits the jurisdiction of its courts to actual cases or controversies. Therefore, should the CRST Tribal Council choose to authorize the CRST tribal courts to issue advisory opinions in matters not involving actual disputes, it could certainly do so without violating the tribal Constitution and ByLaws. But to date it has not done so! *42 Section 1-2-1 (2) of the Cheyenne River Sioux Tribe’s Law and Order Code only authorizes the Cheyenne River Sioux Tribal Court “to handle matters of a judicial 'nature not specifically placed within the jurisdiction of some other [CRST] judicial forum.” (Emphasis and explanatory parenthetical supplied). Neither party could cite, and this Court is unaware of, any prior decisions by this Court on the question of the applicability of the mootness doctrine to CRST tribal cases. Thus, the question of mootness posed by the Respondents’ motion appears to be a question of first impression before this Court.
The parties have cited to the Court numerous mootness cases, mostly decided by the federal courts. In the federal judicial system, mootness plays a critical constitutional role since the jurisdiction of the federal courts is constitutionally limited by Article III of the United States Constitution to actual cases or controversies. Mootness applies therefore to any circumstances that arise during the course of the proceedings that “destroy the justiciability of a suit previously suitable for determination.” 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and, Procedure, § 3533 (2d ed. 1984 & Supp.1998). Therefore, under the doctrine, “the suit must remain alive throughout the course of the litigation, to the moment of final appellate disposition.” Id, See generally, Richardson v. McChesney, 218 U.S. 487, 31 S.Ct. 43, 54 L.Ed. 1121 (1910); Selden v. Montague, 194 U.S. 153, 24 S.Ct. 613, 48 L.Ed. 915 (1904); Jones v. Montague, 194 U.S. 147, 24 S.Ct. 611, 48 L.Ed. 913 (1904); Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895).
Since the CRST Law and Order Code limits the jurisdiction of the Tribal Court (and therefore the jurisdiction of this Court on appeal from the Tribal Court) to “matters of a judicial nature,” this Court decides that doctrines of mootness should apply by analogy to tribal proceedings. Nevertheless, since the CRST courts are not bound by the same constitutional limitations as federal courts, this Court does not deem it appropriate to adopt federal mootness cases “lock, stock and barrel.” Rather, the federal cases should be looked to by analogy to determine the fundamental tribal law question of whether the proceeding pending before the court is a matter “of a judicial nature,” which necessarily must include each party having a continuing interest and state in the controversy and the controversy remaining a live dispute subject to the remedial powers of the court.
One arena, for example, where this Coui't deems it appropriate to depart from the federal mootness doctrine involves the federal law treatment of mootness as a fundamental jurisdictional defect which not only can be raised at any time by the parties, but as to which the court may also note the defect on its own motion. Since mootness in the federal system involves enforcing basic constitutional limitations on the jurisdiction of the federal courts, the obligation of a federal judge to raise a mootness concern on her or his own motion makes sense. In this tribal context, however, such a rule makes less sense. Thus, challenges to the “judicial nature” of a proceeding should normally be raised by the parties if they are to be considered by the CRST tribal courts. Here, however, the Respondents properly raised their mootness concerns, placing the matter squarely before this Court.
In the federal system, an appeal becomes moot when the issue “[presented [is] no longer live or the parties lack a legally cognizable interest in the outcome.” Murphy v. Hunt, 455 U.S. 478, 481, 102 *43 S.Ct. 1181, 71 L.Ed.2d 353 (1982). The critical question is whether there is a continuing controversy that can be redressed by the appellate court. Carpenters Union v. Labor Board, 341 U.S. 707, 715, 71 S.Ct. 966, 95 L.Ed. 1309 (1951). One way a case can become moot involves that situation in which interim relief or subsequent events have completely removed the possibility of any effective judicial remedy. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). A couple examples will illustrate the point. In DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), the United States Supreme Court found moot an equal protection challenge to the University of Washington Law School affirmative action admissions program where the plaintiff had secured a preliminary injunction which had permitted him to virtually complete his law school education while the case was pending. In DeFunis the grant of interim relief so changed the position of the parties that there was no remediable issue left by the time the case reached the United States Supreme Court. The Respondents cite two similar election-based cases to make their point. In Backus v. Spears, 677 F.2d 397 (4th Cir.1982), an appeal of the denial of injunctive relief that sought to restrain an election was found moot since the election had already been conducted. In Michael v. Cockerell, 161 F.2d 163 (4th Cir.1947), the Court found an effort to enjoin the collection of a poll tax to be moot after the election had already been conducted employing the poll tax. In these two cases, it was not interim relief, but, rather, subsequent events that rendered the dispute no longer capable of being remedied by the relief sought by the Appellant.
In this case, the same problem exists. In his request for a preliminary injunction, the Appellant only sought to restrain the swearing in and seating of Gregg Bourland as tribal Chairman pending the outcome of this litigation. The Tribal Court denied both the preliminary injunction and a stay pending appeal. As a consequence, Gregg Bourland was sworn in as tribal Chairman. As the Respondents point out, this Court cannot undo history. This Court therefore, cannot unseat Mr. Bourland temporarily from office pending the outcome of the litigation, nor did the Appellant originally seek such relief. Indeed, before both the Tribal Court and this Court the Appellant took the position that he had no objection to Gregg Bourland serving in a “hold-over” capacity as outgoing tribal Chairman pending final resolution of its complaint. While this Court, without expressing any firm view on the question, has serious legal doubts about the legality of such a proposal, it is unable to see, and the Appellant was unable to explain, the difference between Gregg Bourland serving in a “hold-over” capacity as tribal Chairman and Mr. Bour-land serving as the newly elected Chairman, subject to being removed from office and a new election ordered if the Tribal Court or this Court were to find merit to the Appellant’s Complaint. Since both parties appear to concede that a new tribal election constitutes an available judicial remedy in the event that the Appellant’s complaint is found to be meritorious, this Court fails to see any continuing remedial option available in this appeal. In any event, Mr. Bourland has already been sworn in and this Court cannot undo that fact, thereby rendering the remedy sought no longer viable.
Most of the election-based cases cited by the Appellant appear distinguishable. Appellant relies on cases that generally involve the legality of election or voter qualification laws or election districts, all of which persist after the election is held and can become a factor in the next election. *44 E.y. Chandler v. Miller, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997), Morse v. Republican Party of Virginia, 517 U.S. 186, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996), Stores v. Brown, 415 U.S. 724, n. 8, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), Rosario v. Rockefeller, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). By contrast, the challenged conduct in this proceeding is not required by law, but, rather constituted alleged individualized illegal conduct directed at the Appellants’ candidacy. There is no reason to believe that such individualized misconduct, if any occurred, would survive the 1998 election and recur.
While recognizing that there are some mootness problems with his appeal, the Appellant relies on two claimed exceptions to the mootness doctrine as grounds for denying the Respondents’ motion to dismiss. First, based on Sibron v. New York, 392 U.S. 40, 53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), it argues that wrongs that have collateral consequences should not be treated as moot. Second, relying on the Supreme Court’s decision in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), it argues that wrongs that are capable of repetition, yet evading review, should not be treated as moot. This Court finds neither of these two exceptions applicable here. While sometimes advanced as an exception to the mootness doctrine, the collateral consequences rule is actually merely an application of the doctrine. If a wrong continues to have collateral consequences to the party, the wrong still constitutes a live dispute and is not moot. Here, however, when asked by the Court to what continuing collateral consequences Wayne Ducheneaux has been subjected as a result of Gregg Bourland’s seating as Tribal Chair, the Appellant’s counsel was unable to offer any and none appear evident to the Court. More troubling is the claim that the issue here is capable of repetition, yet evading review. On close analysis this doctrine also would appear inapplicable to this case. The juxtaposition of the DeFunis case, discussed above, with Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) provides an instructive lesson in the meaning of this exception. In Roe, the question was whether a challenge to a state statute restricting abortion was moot when the party seeking the abortion was no longer pregnant and in need of an abortion at the time the case reached the United States Supreme Court. The Court noted that the period of human pregnancy of nine months was not long enough to permit a case to litigation fully through various levels of appellate courts, yet the plaintiff (or, perhaps, other parties similarly situated) would almost certainly find themselves in a like circumstance again unless the Court addressed the constitutional merits of the Texas abortion law. By contrast, in De-Funis, while Mr. Defunis was able to secure interim relief, it was not clear that every frustrated applicant for law school who challenged the affirmative action admissions policies of the school on like legal grounds would receive such interim relief. Thus, in the DeFunis case the issue was capable of repetition, but did not evade review.
Similarly in this case, this Court has grave doubts both that the issues raised by the Appellant are capable of repetition and that they evade review. As noted above, most of the election-based cases cited by the Appellant rejecting mootness claims justify review based on the continuing effects of challenged election qualifications or procedures established by law. No such continuing tribal statutory command is challenged here. Since most of the Appellant’s legally cognizable claims relate to alleged civil rights violations by the Respondents in their con *45 duct and certification of the 1998 election, to assume that the issues here are capable of repetition, this Court would have to assume that the Appellant (or, perhaps, others) would again run for tribal chair, that the election board would engage in virtually identical allegedly illegal conduct, and that, as here, the vote count would be so close that such actions might make a difference to the outcome of the election. In Roe v. Wade, the likelihood of future pregnancies and women desiring abortions in Texas, constituted a virtual certainty. In this case, the chain Appellant would have us draw constitutes at best gross speculation.
But, even if this Court were to accept such gross speculation as satisfying the capable of repetition prong of the test, it is still clear that the case would fail the evading review prong. The only reason why this case is moot is that the Tribal Court denied the Appellant’s motion for a preliminary injunction and declined to stay its order, resulting in the almost immediate swearing in of Gregg Bourland.[2] As in DeFunis, one can easily imagine an identical case in which the Tribal Court granted a preliminary injunction or, even, denied a preliminary injunction and granted a stay of its order, leaving an interim injunction in place for purposes of appeal. In such a case, the issue would not be moot. Thus, even if one grants Appellant’s argument that this matter Is capable of repetition, the issues posed in this appeal clearly do not evade review. Consequently the appeal (but not the case pending in the Tribal Court) is moot.
While the appeal of this matter is moot and the Court is therefore without jurisdiction to grant Appellant the relief he seeks, the Court does note with some concern one issue raised in the Appellant’s brief. He claims a denial of due process and a violation of tribal law based on the Tribal Court’s failure to enforce the subpoena duces tecum for (1) the tapes or verbatim transcriptions of the tapes of all 1998 election board meetings, (2) the ballot boxes from CRST Voting Districts Numbers 1 and 4 and (3) the official tally sheet for CRST Voting Districts Numbers 1 and 4, showing the total number of ballots distributed, the total number of ballots cast, the total number of spoiled and unused ballots and the total number of Affidavit ballots. The Tribal Court, noting the Respondents’ objections to the subpoena, indicated it would rule on them at a later time. Consequently, this material was unavailable to the Appellant during the hear *46 ing on the motion for a preliminary injunction. Since this case is still pending in the Tribal Court and could, after final judgment, return to this Court, the Court deems it appropriate in the interests of efficiency and to promote the prompt resolution of this dispute in the public interest to note that, subject to any legally justifiable objections the Respondents might make, the material sought by the Appellant appears not only material but central to the claim he makes in the portions of his complaint that have not been dismissed. Accordingly, this Court would expect the Tribal Court to give the Appellant appropriate latitude in discovery to permit him to explore whether his claims can be proved. Additionally, given the great public interest in this dispute, the Court would expect the Tribal Court to expedite its consideration of the matter in a fashion consistent with full discovery by all parties and a full airing of the merits of the dispute. The fairness and integrity of both the Cheyenne River Sioux Tribal Courts and the CRST election processes deserve no less.
Based on the foregoing, it is clear that the Appellant’s appeal of the denial of his application for preliminary injunction is moot. Accordingly, the Respondents’ Motion to Dismiss this appeal is hereby granted and Tribal Court is free to and should address the Appellant’s remaining claims with appropriate deliberative speed.
Ho hecetu yelo.
IT IS SO ORDERED.

. The Court commends the attorneys for both sides of this case for the careful and thoughtful manner in which they have briefed the issues presented to the case. The professional care shown by both sides of this case in their respective written and oral submissions has been quite helpful to the Court and is greatly appreciated.

. Normally, the Tribal Court should routinely grant a stay on appropriate terms and conditions in cases where the denial of the stay would so frustrate the objectives of the party as to foreclose appellate review. This approach seems appropriate since the Tribal Court should not actively frustrate the right of appellate review granted to all parties by tribal law. While Rule 62(a) of the Cheyenne River Sioux Tribe Rules of Civil Procedure (CRST Rules) does not make a stay in a case involving the appeal of an interlocutory or final injunction automatic, the Tribal Court has discretion to enter such a stay under CRST Rule 62(c). While normally stays should be granted where to do otherwise would frustrate the right of appeal, in particular cases, there may be overriding public policy considerations or other special circumstances that may justify departure from this normal course of proceeding. If so, spelling out those concerns in a separate opinion on the stay application would be helpful to this Court. While this Court has an independent authority to issue such stays under CRST Rule 62(g), it normally will not exercise that power until an application has first been presented to and denied by the Tribal Court. The reason for that procedure is in part to secure the benefit of findings on and analysis of the merits of the stay application by the tribal trial court. Without such a written determination by the tribal trial court, exercise of this Court's authority to independently and expeditiously issue such stays pending appeal is made far more difficult.