**INTERNATIONAL UNION OF ELEC-
TRICAL, RADIO AND MACHINE
WORKERS, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 12887.

United States Court of Appeals
Third Circuit.

Argued Oct. 8, 1959.

Decided Dec. 22, 1959.

Benjamin C. Sigal, Washington, D. C. (Edmond F. Rovner, Washington, D. C., on the brief), for petitioner.

Earle W. Putnam, Washington, D. C. (Stuart Rothman, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Duane B. Beeson, Attorney, National Labor Relations Board, Washington, D. C., on the brief), for respondent.

John G. Wayman, Pittsburgh, Pa. (W. D. Armour, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for intervenor.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This petition for review of an order of the National Labor Relations Board (Board) simply raises a question of the substantiality of the evidence to support the Board's determination.

The complaint initiated by the International Union of Electrical, Radio and Machine Workers, AFL-CIO (IUE) alleged that Westinghouse Electric Corporation (Westinghouse) had violated Section 8(a) (5) and (1) of the National Labor Relations Act [1] by refusing to bargain with the IUE with respect to an employee stock purchase plan and by putting the plan into effect without affording the IUE an opportunity to negotiate as to its terms. The Intermediate Report filed by the trial examiner contained extensive findings of fact, and conclusions of law favorable to the complainant, IUE. On review, the Board concluded that there had been no violation of Section 8 (a) (5) or (1).

The facts found by the trial examiner may be summarized as follows: Westinghouse in 1957 employed approximately 127,000 employees, 94,000 of whom were represented by labor organizations in 268 collective bargaining units. The IUE represented 39,000 of the employees in thirty-nine of these bargaining units. The other organized employees were represented by the Federation of Westinghouse Salaried Employees, the International Brotherhood of Electrical Workers, and the United Electrical, Radio and Machine Workers.

Each of the Westinghouse bargaining units organized by the IUE was represented in the IUE-Westinghouse Conference Board (Conference Board) for collective bargaining purposes. During April, 1957, this organization had as its chairman Robert Nellis, and as its secretary Ellis Hockenberry. Both were also members of the IUE's negotiating committee, which was made up of members of the Conference Board.

On April 8, 1957, Nellis wrote Clark Frame, Westinghouse's director of labor relations, requesting a meeting for the purpose of discussing certain specified problems relative to the pension and insurance programs then in effect between Westinghouse and the IUE. The meeting was set for April 22. On April 18 Frame telephoned Hockenberry and indicated his desire to place on the agenda for the meeting a proposal for an employee stock purchase plan. Hockenberry agreed to the addition of the subject to the agenda.

At the meeting of April 22, following discussion of the pension and insurance matters, the subject proposed by Westinghouse was taken up. There were material discrepancies between the testimony offered by the General Counsel (of the Board) and Westinghouse as to what transpired at this and subsequent meetings. This was especially true as regards the position taken by Westinghouse on negotiability of the stock purchase plan. Inasmuch as this issue is central to the conflicting conclusions reached by the trial examiner and the Board, we summarize the evidence presented on this point.

1. 29 U.S.C.A. § 158(a) (1) and (5).

Frame testified that in his position as director of labor relations he is the "chief or main contact" between Westinghouse and the various unions representing its employees. He indicated that he first learned that management was about to propose reinstitution of an employee stock purchase plan to the board of directors on April 17 or 18.[2] Inasmuch as he felt a duty to see that the plan was properly announced, Frame contacted Hockenberry and others on April 18. Frame began discussion of the plan at the April 22 meeting by indicating several reasons why Westinghouse felt the time propitious for reinstitution of the plan. He indicated that he regretted the short notice involved but explained that this resulted from the desire of the company to initiate the plan as soon as possible and still avoid the year-end rush in the accounting department. To accomplish this, management intended to present the proposal to the board of directors for approval at its meeting on Wednesday, April 24. If approved, the proposal would then be submitted to the Securities and Exchange Commission (SEC). After approval by the SEC, this calendar was to be followed: applications of employees for participation would be accepted from May 13 to 24, payroll deductions would be begun June 1, and stock issued in December. Frame indicated the prospectus was not yet available but gave the union representatives two copies of the plan which had been in effect prior to 1955. Since there were no significant changes in the new plan, he felt that they would adequately serve to apprise the union as to the features of the program.[3]

Frame additionally testified that he was asked by Nellis whether Westinghouse considered the plan a matter for collective bargaining, and he replied that, although he had no legal opinion on the question and was not prepared to take a position, "from a very practical point of view [the company] had a relationship to build and uphold, and * * * was discussing it with [the union], regardless of whether it was a matter of negotiations or not a matter of negotiations." On being asked whether Westinghouse would proceed with the plan regardless of objections from the Union, Frame replied that if there were "any substantial objection on the part of IUE" Westinghouse would at that point decide whether or not to "proceed with the plan as regards the employees represented by the IUE." He also testified that although it was a company-wide plan, there were provisions that it need not be applied that way, i. e., the company would put it into effect in the "non-bargaining areas" and in the union-represented areas where "there were no substantial objections" to it.

Nellis' testimony concerning the meeting of April 22 diverges from that set forth above primarily as regards the position taken by Westinghouse on negotiability of the stock purchase plan. Nellis testified that he asked whether the plan was a subject for negotiations and that Frame replied "the plan was not a subject of negotiations and that he believed that the IUE had waived their rights to bargain on the plan" by reason of the existing contract between the

2. Beginning in 1948 and continuing until 1955, Westinghouse had in effect a voluntary stock purchase plan under which employees might acquire common stock in the company at a reduced price. Other than the reduction in price, Westinghouse made no contribution to the plan nor did it condition the distribution of the accumulated stock or cash in an employee's account on continued employment, length of service, or age. During the period of its operation, none of the unions representing the employees ever discussed the plan or requested bargaining with regard to it.

3. In short, the plan, which is terminable and changeable by the management at its discretion, was purely voluntary and open to employees only. It provided for payroll deductions to be made for 6-month periods, with stock to be purchased at the end of the period out of the accumulation. The stock would be valued at $6 per share less than the average market price for the first 20 days in November, the maximum to be no more than $70 and the minimum no less than $46. In addition, Westinghouse would absorb the income tax accruing on the differential.

company and the union. Additionally, Nellis asserted that during a recess Frame again stated that the plan was not a subject for negotiations.

Frame testified that, prior to the termination of the conference, he asked that the union advise him before the coming board meeting whether it had any serious objections to the reinstitution of the plan. There was some misunderstanding as to when the board meeting was scheduled to be held. Frame testified that he indicated that the board was to meet on April 24; however, the union representatives were of the opinion that he had said next Wednesday, which they took to mean May 1. In any case, on April 24 Frame called Hockenberry to find out what the union "had done about the stock purchase plan." The misunderstanding as to dates was brought to light and Nellis directed Hockenberry to draft

the telegram which is set out in the margin.[4] Frame replied by telegram [5] and in addition arranged by telephone for a meeting the following day.

As to what transpired at this second meeting, Frame testified that he told the IUE that the company was interested in whether the union "had a substantial objection" to the reinstitution of the plan. He asked Nellis if he was prepared to state the IUE position and Nellis replied that he was not. Immediately prior to the close of the meeting, Frame stated, "Now, I want you to know we are not refusing to bargain over this question." Most importantly, he testified that although he stated to Nellis that he was willing to meet again with the union on this matter, he also " * * * told [him] that as far as the company-wide application of the plan [6] was concerned it was not subject to change."

4. "C. C. Frame, Director of Labor Relations, W. E. Corp

"On Monday, April 22nd, 1957, a small committee of the IUE-Westinghouse Conference Board met with you and other representatives of Westinghouse to discuss some pension and insurance matters. At that meeting you presented a proposal whereby employees of Westinghouse could purchase stock of the corporation. You had informed us orally on April 18 that you intended to present such a proposal on April 22nd. You advised Mr. Hockenberry that the only matter open for negotiations was whether or not IEU [sic] would accept the plan. You stated that a reply from IEU was required on or before Wednesday ? [sic] April 24, 1957 the date on which the Westinghouse Board of Directors was scheduled to meet.

"This telegram is to confirm the position of the officers of the IUE Westinghouse Conference Board which was conveyed to you orally today by Mr. Hockenberry as follows.

"First, the committee to which you presented the plan was not authorized to conclude an agreement with you concerning a stock purchase plan. This committee is not now authorized, therefore, either to accept or reject your proposal.

"Second, when Westinghouse submitted its plan to this committee on a take it or leave it basis, and allowed only two days for a reply, it failed to bargain in good faith. Westinghouse officials had

ample notice of the fact that this plan was to be acted upon by the Westinghouse Board of Directors on this date. Good faith on your part required, among other things, that you give us substantially more notice of your desire to discuss this matter than you did, and that you allow substantially more time for negotiations and discussion of the plan than you did.

"We demand that Westinghouse withdraw its ultimatum and bargain in good faith with IEU–AFL–CIO about its proposed stock purchase plan. We are prepared to meet with you without delay for such bargaining.

"IEU Westinghouse Conference Board Robert Nellis Chairman
    Ellis Hockenberry Secy."

5. "Robert Nellis 706–8 Shields Bldg. 822 Wood St Your telegram of today contains a number of inaccurate statements of our position. Rather than try to cover these points by telegram we will be willing to meet with you tomorrow to further discuss this matter.
    "C. C. Frame,
      "Director Labor Relations Westinghouse Elec Corp"

6. The IUE represented only a portion of the bargaining units at Westinghouse and therefore Westinghouse had no duty to bargain with the IUE for changes affecting any other bargaining units. 29 U.S. C.A. § 159.

Once again the testimony of Nellis and the other witnesses produced by the General Counsel conflicts with Frame's testimony concerning negotiability of the plan. Nellis stated that he asked on more than one occasion whether the plan was subject to collective bargaining and that Frame replied in the negative. He further testified that he reiterated the IUE's interest in bargaining on the plan and their availability to do so, but stated that at that time neither he nor Hockenberry was in a position either to accept or reject the plan. At the close of the meeting, Nellis told Frame that the "company would hear more of the union's views in the near future."

Thereafter Westinghouse circularized its employees, including those represented by the IUE, concerning the plan. No further efforts to reopen the matter for discussion were made by the IUE prior to the institution of charges with the Board.

The trial examiner disbelieved Nellis' testimony concerning Frame's position regarding negotiability of the plan, i. e., that the plan was not a subject of negotiations and that Westinghouse would not bargain thereon. Despite the fact that he accepted the company's testimony, the trial examiner concluded that there had been a refusal to bargain. The Board, on review, substantially adopted the subsidiary findings of the trial examiner but concluded that there had been no refusal to bargain upon the part of Westinghouse.

■■ The standard for review of decisions of the National Labor Relations Board has been set forth in statute,[7] and the case law on the subject is voluminous. The "substantial evidence" standard is not modified where the trial examiner and the Board differ, although " * * * evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion." Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456.

It should be noted, however, that the Board here did not question the credibility rulings made by the trial examiner but rather adopted them. True, it did differ as to the conclusion to be drawn from the evidentiary facts, but this is its province. Thus this case is akin to National Labor Relations Board v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135, 7 Cir., 1954, 212 F.2d 216 (C.A.7, 1954), where it was held that in disagreements between the Board and the trial examiner as to conclusions, it is of little, if any, consequence that the trial examiner was in a better position than the Board to evaluate the testimony of witnesses.

■ It is not for the reviewing court to try the issue de novo, but rather to apply the "substantial evidence" standard to the record presented to it. National Labor Relations Board v. Akin Products Co., 5 Cir., 1953, 209 F.2d 109. This does not permit the reviewing court to weigh evidence or set aside reasonable conclusions of the Board, Joy Silk Mills v. National Labor Relations Board, 1950, 87 U.S.App.D.C. 360, 185 F.2d 732, certiorari denied 1951, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350, even though its conclusions are contrary to those of the trial examiner.

■ A careful study of the whole record convinces us that there is substantial evidence to support the conclusion of the Board that there was no refusal to bargain by Westinghouse on the merits of its stock purchase plan.[8]

7. " * * * The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C.A. § 160(e).

8. In effect this conclusion amounts to a finding of a failure of proof of the allegations of the complaint.

In light of its finding it was unnecessary for the Board to consider the further issue presented to and decided by the trial examiner, namely, whether or not the employee stock purchase plan was a mandatory subject for collective bargaining. We need not do so either.

The other contentions of the petitioner we find to be without merit.

The petition will be denied.