**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 19, INTERNATIONAL BROTH-ERHOOD OF LONGSHOREMEN, AFL–CIO, Respondent.**

**No. 12979.**

United States Court of Appeals Seventh Circuit.

Jan. 10, 1961.

Rehearing Denied Feb. 28, 1961.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Frederick U. Reel, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Irving M. Friedman, Harold A. Katz, Jerome Schur, Arthur Brody, Oscar D'Angelo, Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

The National Labor Relations Board is here seeking enforcement of its order issued November 12, 1959, against respondent, to cease and desist from unlawful refusal to bargain.

The order directed respondent to:

"1. Cease and desist from:

(a) Insisting, as a condition precedent to executing a collective bargaining agreement including Chicago Stevedoring Co., Inc., * * * that Wacker Warehouse guarantee that any work of transferring freight from its warehouse would fall within the jurisdiction of the

Respondent, to the exclusion of any employees of Warehouse."

■ The Board found that, for more than 20 years, collective bargaining in the Chicago longshore operations had been conducted on a group basis. The practice had been that as the contract expiration date approached, respondent would ask all stevedore-employing companies to set a date to discuss a new contract. The employers would meet to draft a joint proposal which would be submitted to respondent at the first meeting, at which time each employer would receive a copy of respondent's proposals. The employers, meeting together, would determine their position by majority vote. At later meetings, with respondent, one employer-representative would be the principal spokesman for the employer group. In recent years, Frederick W. Turner, Jr., appears to have performed this function, although other employer-representatives, occasionally, discussed particular phases of the contract with respondent. The signing of a memorandum of agreement by representatives of respondent and of the employers was followed by execution of individual contracts with the individual employers. For some years, now, these individual contracts have been identical. Respondent contends that the employers never constituted an "association". There was some conflicting testimony on this point, but the record shows ample evidence to support the Board's finding.

The Board found that no member company ever refused to execute an individual contract after the memorandum of agreement had been signed, or ever broke away from the negotiations to bargain independently. Whenever a new stevedoring company entered the field, the newcomer would be offered the contract currently in effect with the others. A single exception shown was that of Seaway Stevedoring Co., which in 1956 was given a contract running to 1959. However, that contract was to incorporate changes resulting from negotiations in 1957, and Seaway was represented at the 1957 talks.

The disputed work concerns only one segment of the merchandise handled by Wacker Warehouse Company, which operates a storage warehouse: i. e. merchandise which arrives by boat or barge and is moved into storage. From 1951 to 1953, all unloading of marine merchandise was carried on, for Wacker, by Illinois Warehouse Co., an independent concern, which had a contract with respondent and which used respondent's longshoremen to unload cargo and to move it into storage, or to load it directly onto trucks or freight cars. All merchandise, marine and nonmarine, which was removed from storage to trucks or trains was handled by Wacker's own employees under Wacker's contract with Miscellaneous Warehousemen's Union, Local 781. In 1953, Wacker undertook the work previously performed for it by Illinois Warehouse and also assumed the contract with respondent. When the time came to remove marine merchandise from storage to trucks and trains, respondent demanded this work for its members. However, this work of removing all merchandise from storage was guaranteed to Wacker's employees under their aforesaid contract with Wacker. The Board found that after a discussion of the demands, respondent had acquiesced in the then division of work whereby marine cargo which had gone into storage would subsequently be taken from storage and loaded onto trains or trucks by Local 781 Warehousemen only. In May, 1954, Wacker and respondent entered into the standard industry contract to run until May, 1955. This standard contract provided that respondent's members would have jurisdiction of:

> "All work from the hold of vessel, through house to car, truck or upper floors, in warehouse, to its final resting place in said warehouse, or *in removing cargo from the warehouse, up to, on and into the hold of the vessel, truck or car, or vice versa."* [Emphasis added.]

The Board found that as the emphasized wording was inconsistent with the previ-

ous understanding between Wacker and respondent, respondent agreed that the emphasized words would not apply to Wacker. General Counsel's Exhibit No. 15, shows an asterisk inserted prior to the words "truck or car, or vice versa," and a footnote "per letter attached," but the Board notes in its decision that no letter was attached. Wacker did write respondent twice asking for written confirmation of this exception, but respondent made no reply. The Board found, however, that the Local 781 warehousemen continued to handle marine merchandise after it had been in storage and was being loaded onto trucks or trains. Here too, there is a conflict in testimony, but sufficient support exists in the record for the Board's finding.

The new contract in May, 1955, contained the same provision. Respondent staged a work stoppage in support of its demand for conformity with the exact wording of the provision. Wacker still had its contract with its warehousemen employees which gave them the disputed work. Wacker then abandoned the business of receiving marine merchandise for storage.

In March, 1957, Wacker joined with the other employers in negotiating a new contract with respondent. When preliminary discussions indicated that respondent intended to insist on the same provision as quoted above, Wacker dropped stevedoring operations entirely.

Henry Marsh, a sales representative on a monthly retainer for about twenty warehouse concerns, including Wacker, and George Johnson, a Wacker foreman, organized Chicago Stevedoring Co., which entered into a contract with Wacker to take over the business which Wacker was discontinuing. On May 13, 1957, Chicago Stevedoring was invited to join in the then pending contract negotiation talks. Wacker ceased to take any part in those negotiations. Mr. Marsh, President of Chicago Stevedoring, and Mr. Turner, both testified that on May 16th, in response to questions from respondent's representatives, they had given assurances that Chicago Stevedoring

and Wacker were entirely separate and independent, and that respondent's longshoremen members would have all the work which Chicago Stevedoring had to give. This did not satisfy respondent.

To avoid delay in the agreement, which was otherwise complete, a paragraph was added to the memorandum of agreement, as follows:

"15. Agreement with respect to Chicago Stevedoring Company only is subject to mutual agreement concerning the jurisdiction of work formerly at Wacker Warehouse, now at Chicago Stevedoring Company, handled by Local 19 under agreement expiring May 15, 1957."

This memorandum was signed by Mr. Turner for the employers and by counsel for respondent. Individual contracts embodying the agreed provisions were promptly tendered all employers except Chicago Stevedoring.

On May 27th, Mr. Turner offered to execute the same contract for Chicago Stevedoring as had been tendered the other employers, under the terms of which, Chicago Stevedoring would be obligated to give all its work to respondent. Respondent refused this and a similar offer on August 22nd. On October 5th, counsel for respondent promised Chicago Stevedoring a contract if Chicago Stevedoring and Wacker would agree to a letter of understanding to the effect that respondent's longshoremen members, contrary to the facts as found by the Board, were currently moving marine freight out of Wacker's storage onto trucks and trains, and that respondent's members would continue to have exclusive jurisdiction of this work. Neither Chicago Stevedoring nor Wacker agreed. On November 6, 1957, November 20, 1957, and April 11, 1958, Mr. Turner again, without success, offered respondent the standard contract. At the last occasion, counsel for respondent, for the first time, suggested a contract with a higher scale of wages.

█ It thus appears that after entering into the agreed contract with the

employers' association, respondent violated its duty to bargain in that respondent insisted on securing a guaranty of work belonging to Wacker, outside the scope of mandatory bargaining, as a condition of executing the agreed contract with Chicago Stevedoring. N. L. R. B. v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 349–350, 78 S.Ct. 718, 2 L.Ed.2d 823.

The Trial Examiner recommended dismissal of the complaint on the ground that the bargaining invitation was not extended by Mr. Turner expressly in the name of the employers' association. Respondent contends that the Board itself, having set aside the Trial Examiner's findings, and having made new findings, failed to make any specific finding that a request to bargain with the association (rather than with Chicago Stevedoring) was in fact made. In addition, respondent argues that allegations made in the initial complaint, prior to its amendment, constitute admissions by the General Counsel.

A finding that respondent was being requested to bargain with the association is implicit in the findings and conclusions of the Board, although it is not individually stated in so many words. The complaint initially charged a refusal to bargain with Chicago Stevedoring, and stated that Chicago Stevedoring's employees comprised a unit appropriate for bargaining. Well before the hearing, the General Counsel amended the complaint to charge refusal to bargain with the association of employers and alleged that a unit of all the longshoremen employed by all the association members (including Chicago Stevedoring) was a unit appropriate for bargaining. It is not unusual for there to be more than one "appropriate" unit. The Board may choose from among several appropriate units. Mueller Brass Co. v. N. L. R. B., 1950, 86 U.S.App.D.C. 153, 180 F.2d 402, 405; Harris Langenberg Hat Co. v. N. L. R. B., 8 Cir., 1954, 216 F.2d 146, 148. The Board found that Mr. Turner executed the memorandum of agreement for the employers. The evidence showed that

on numerous occasions, Mr. Turner offered to execute the same agreement for Chicago Stevedoring as for the other members of the association, pursuant to the aforesaid memorandum of agreement. It does not appear that respondent can have been confused as to the invitation to bargain. Whether Mr. Turner announced at each meeting that he was representing the association was not material. The form of the request is not controlling. M. H. Ritzwoller Co. v. N. L. R. B., 7 Cir., 1940, 114 F.2d 432, 435–436; N. L. R. B. v. Scott & Scott, 9 Cir., 1957, 245 F.2d 926, 927–928; N. L. R. B. v. Southeastern Rubber Mfg. Co., 5 Cir., 1954, 213 F.2d 11, 14. In refusing to execute the agreement, under the circumstances here shown, the respondent was refusing to bargain with the association.

As the only issue left to be resolved concerned a guaranty on which respondent had no right to insist, the Board could properly order execution of the standard contract pursuant to the memorandum of agreement. N. L. R. B. v. Nesen, 9 Cir., 1954, 211 F.2d 559, certiorari denied 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 646; N. L. R. B. v. Dalton Tel. Co., 5 Cir., 1951, 187 F.2d 811, 812, certiorari denied 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623; H. J. Heinz Co. v. N. L. R. B., 1941, 311 U.S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309. However, the contract in question would have expired by its terms in May, 1960. That portion of the Board's order directing execution of that specific contract has thus become moot. We are given to understand from statements of counsel made in oral argument that the issues involved here are not moot; that by agreement of the parties in current contracts and memorandum of agreement, these issues have been preserved.

With the sole exception noted above, enforcement of the Board's order in full is hereby granted.

All arguments raised by the parties which have not been the subject of particular comment in this opinion have

nevertheless been carefully considered in arriving at our decision.

Enforcement granted in part and denied in part as moot.