**UNITED STATES PIPE AND FOUND-RY COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 18678.**

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1962.

John J. Coleman, Jr., Douglas Arant, Birmingham, Ala., E. L. All, White, Bradley, Arant, All & Rose, Birmingham, Ala., of counsel, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Assoc. Gen. Counsel, N. L. R. B., Allan I. Mendelsohn, Atty., N. L. R. B., Washington, D. C., Stuart Rothman, General Counsel, Elizabeth W. Weston, Attorney, National Labor Relations Board, Washington, D. C., for respondent.

Before RIVES and WISDOM, Circuit Judges, and CARSWELL, District Judge.

RIVES, Circuit Judge.

The difference between the parties is pointed up by their separate concepts of the question to be decided. The petitioner-employer submits that the issue is:

"Whether a union, the certified representative of a plant bargaining unit may require of an employer as a condition to its agreement that its contract and all contracts under negotiation between the employer and other certified representatives of different bargaining units at other plants shall expire upon a common date."

The respondent-Board, on the other hand, argues that:

"* * * where, as here, two or more unions are simultaneously negotiating separate contracts with the same employer, such unions have just as much right to insist that the contracts shall expire on the same date as the employer has to insist that they shall expire on different dates."

The original complaints were issued against the unions upon unfair labor practice charges filed by the employer to the effect that the unions refused to bargain in good faith with the employer in violation of Section 8(b) (3) of the National Labor Relations Act, 29 U.S. C.A. § 158(b) (3). The cases were consolidated for hearing. When the General Counsel rested his case in chief, each of the respondent unions moved to dismiss the complaint on the ground that the evidence failed to show a violation of Section 8(b) (3). The Trial Examiner took the motions to dismiss under advisement and recessed the hearing, commenting:

"As an aid to me in determining whether I should grant the motions, as I am inclined to do, to grant it; I would welcome from all parties their legal analysis of the issue involved here; namely whether or not it is a violation of Section 8(b) (3) to require, *as the evidence indicates here respondents did require*, common termination dates of contracts to and beyond the point of impasse." (Emphasis supplied.)

Subsequently, the Trial Examiner dismissed the complaints' holding squarely that the demand of each of the unions for common expiration dates of all contracts was, as a matter of law, within the realm of permissible bargaining.

The Board, in an extremely brief decision, affirmed; but, in so doing, refused to consider the ground upon which the Trial Examiner based his decision and, instead, held simply that, because contract duration is a bargainable issue, it is not an unfair labor practice for unions to insist upon specific expiration dates for their contracts.

The petitioner-employer urges that the Board's decision was based upon an erroneous conception of the facts, that this case does not involve a union demand for a specific expiration date of its contract, but, in each instance, a demand that its contract and contracts under separate negotiaton with other unions expire on the same date common to all.

The two questions are not identical either legally or actually. Legally there can be no serious debate that each union may insist upon a specific expiration date for its contract whether or not that is the same date being insisted on by another union with respect to another contract. This case demonstrates, however, that strong legal objections can be raised to a union's demand that the employer agree with it and with another union or unions for a common expiration date as to two or more contracts. Actually, in practical operation, an employer might accede to a union's request for a specific expiration date for its contract, but then adamantly, and perhaps successfully, resist the demand of another union for the same expiration date for its contract. In that event, the specific insistence of the first union would be met, but its real purpose and object would be defeated. Because we agree with the petitioner-employer that the Board did misconceive the issue to be decided, it becomes necessary to detail the facts and circumstances at some length.

Petitioner-employer, a manufacturer of a number of products, including cast iron pressure pipe, owns and operates

several pipe plants, including one at Burlington, New Jersey, one at Bessemer, Alabama, and one at North Birmingham in Birmingham, Alabama.

Dating back to certifications issued by the Board in 1940, the Molders [1] and its Local 256 have represented petitioner's employees at the North Birmingham plant, while the Steelworkers [2] and its Local 2140 have represented a comparable unit consisting of the employees at the Bessemer plant, excluding, however, several craft groups which are represented by other unions. Acting through other locals, the Steelworkers also represents employees of petitioner at various other establishments, including a plant at Burlington, New Jersey, where the Steelworkers obtained a certification in 1942.[3]

In 1959, the Steelworkers had contracts at the Burlington and Bessemer plants which were due to expire 70 days apart—August 20 at Burlington and October 31 at Bessemer. At the Burlington plant, the parties failed to reach agreement as to the terms of a new contract and the Steelworkers called a strike on or about August 20 when the old contract expired. A few days after that, the Steelworkers started negotiating with management representatives at Bessemer. Here, again, an impasse developed and, as the old contract expired, the Union called a strike commencing October 31.

At North Birmingham, meanwhile, petitioner had been operating under a comparatively new contract with the Molders, which went into effect on June 1, 1959. That agreement was not due to expire until July 31, 1960, but it contained a "reopening" provision and, pursuant thereto, the Molders served notice on November 2 that its members desired to renegotiate certain matters. The parties accordingly started bargaining at that plant about mid-November, but failed to reach agreement, and the Molders called a strike beginning January 26, 1960.

We have carefully read and studied the record of negotiations at Bessemer between the petitioner and Steelworkers and those at North Birmingham between petitioner and the Molders. It would unduly prolong this opinion to set out those negotiations at length. Suffice it to say that we agree with the Trial Examiner on his charaterization of the issue. The Steelworkers did suggest contract expiration dates of May 1 or June 1, but those suggestions were for adoption of a *common* date for *all* three contracts.[4]

1. International Molders and Foundry Workers of North America, AFL-CIO.

2. United Steelworkers of America, AFL-CIO.

3. Steelworkers Local Union 2026 representing the employees at the Burlington plant is not in the geographic area comprising the Tenth Region of the Board and was not named as a party to this case.

4. E.g., the following from the meeting of February 16, 1960:

"Yates (Representing Steelworkers) — We would like to have a three year contract — have it May 1, 1963.

"Nolan (Representing employer) — That would be more than three years.

"Yates — As long as we get a common expiration date we will not argue too much about that.

"Nolan — You mean North Birmingham, Bessemer and Burlington all must expire on the same day?

"Yates — That is right.

"Nolan — I have told you many times before I don't bargain for those plants. I only bargain for Local 2140. I cannot bargain for North Birmingham or Burlington plants.

"Yates — Well then you are going to have to get somebody who can.

"Nolan — I can only negotiate with you for a contract for Local 2140.

"Yates — You all had better get your heads together then.

"Morris (Representing Steelworkers) — On common expiration date — I am sure those officials have the knowledge of common expiration date being an important issue with all unions. I wonder if you are in position to say what the company would do. We are only trying to put the common expiration date in where we can cut down the problems that exist. Should the company agree to grant that common expiration date there won't be any longer problems in the next three years. If they do or don't

The Molders' suggestion of a particular date was likewise conditioned upon acceptance by the employer of that date for all three contracts.[5]

I can't see where it would harm the company.

\* \* \* \* \*

"Roberts (Commissioner, Federal Mediation & Conciliation Service) — On this expiration date. Say the contract expires two years from the date it is signed. That would be a problem to be handled in each negotiation, but it would be up to the others to get their expiration date. We have to start somewhere.

"Yates — That is what we have been trying to get them to agree to do.

"Roberts — You say May 1st. The Company says November 1st.

"Nolan — Even if it was today, February 16th, Mr. Yates said it must be Birmingham, Burlington and Bessemer, all at the same time.

"Yates — Yes — that is part of our demands. A common expiration date.

"Nolan — By common, you mean the North Birmingham and Burlington plants must be the same as Bessemer. Even May 62 or 63.

"Yates — Yes.

"Roberts — I really think for union purposes, even if it was 30 or 60 days apart, that would be alright (sic).

"Yates — I don't think that would answer the purpose.

"Roberts — I am thinking of something that could be lived with — not a utopia.

"Yates — It aint gonna cost the company a dime — they work one union against the other — it has caused all these strikes and that is the only way we know to avert these strikes. When we have a strike at Bessemer they operate in Birmingham — they do the same thing in Burlington. It would be for the benefit of all concerned if we could get a common expiration date. I think we have a good reason for it. We have all agreed to it and that is what we are striving for."

See also the following from the meeting of March 23, 1960:

"Yates: We think if you give us a common expiration date on these contracts we will have no more trouble.

"Nolan: I will go back to my same story. I have nothing to do with any plant except the Bessemer plant. I could not negotiate an expiration date for Burlington or Birmingham.

"Farr (Representing Steelworkers): What is your thought if we were to reach agreement.

"Nolan: I will put it like this. We have pretty well followed steel. Steel expires June 30th. We would like to have our contracts expire November 1, 1961 or November 1, 1962, which would be the same expiration date we have had. Burlington is August 20th and there could not be but two months and a few days — that is not too great a difference.

"Farr: If I understood Mr. Lawson right, he said his desires would be that all union contracts expire on the same date in the same plants. Is that your thinking?

"Nolan: Yes. All of our contracts expire on November 1st. The strange thing about it, I have signed with three unions whose contracts expire November 1, 1961. Sometimes you say you don't pay too much attention to other unions, but you are concerned about them, because they do effect your welfare.

"Farr: We realize that any craft working in the plant could shut the plant down.

"Nolan: That is right. We have to consider them. We have the Machinists and Boilermakers and your group who have not signed.

"Yates: Yes and any one of them could strike you. We do not want to go back to November — I don't.

"Nolan: Steel expires on the same date they had with no change in the expiration date. We have followed steel pretty well throughout.

\* \* \* \*

"Nolan: Mr. Farr, is a common expiration date still a major issue?

"Farr: Unless you are willing to concede.

"Nolan: I have no authority to bargain with you for any other union than Local 2140. I was hoping we could get that out of the way. As we said before, I have no authortiy to negotiate a common expiration date.

"Farr: Let's just make all of them June 1st and strike in the summer time (sic)."

5. According to the testimony of Horn, who represented the employer, and whose testimony was not disputed:

"A. Well, we proposed a January 26th expiration date. The union has asked for a May 1st expiration date. Mr. Roberts, on that occasion, proposed a July 31st expiration date. Mr. W. T. Murray, Corresponding Representative of the union, who was present at that meeting, made a statement to the effect that a July 31st expiration date would be

At the risk of repetition, we restate the question presented by the practically undisputed facts, viz.: whether by pre-arrangement among themselves, each of three unions, certified representatives of three separate plant bargaining units, simultaneously negotiating separate contracts with the same employer, may insist as a condition to its agreement that all three contracts under negotiation shall expire on some common date.

■■ The scope of mandatory bargaining is limited to "wages, hours, and other terms and conditions of employment." [6] Within that scope, the employer and the representative of the employees must bargain or be guilty of an unfair labor practice. Section 8(b) (3) of the Act. A further limitation of the scope of mandatory bargaining is implicit in the authority of the Board to decide upon the appropriate bargaining unit, and in each union's position as the exclusive representative of all employees in such unit:

29 U.S.C.A. § 159(a):

" § 159. *Representatives and elections—(a) Exclusive representatives; employees' adjustment of grievances directly with employer*

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect

to rates of pay, wages, hours of employment, or other conditions of employment * * *."

29 U.S.C.A. § 159(b):

"The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * *."

Under varying facts and circumstances, it has been often held that a proposal to expand the scope of the bargaining unit itself is not within the area of mandatory bargaining.[7]

■ Under the facts of this case viewed realistically, a common expiration date of all three contracts had a vitally important connection with the "wages, hours, and other terms and conditions of employment" of the employees at each plant. Without a common expiration date, any union striking for a new contract on a different date might have to "bail with a sieve" while the employer shifted its production activities to the other plant or plants. With a common expiration date, it is obvious that each union might be able to negotiate a more advantageous new contract for the employees represented by that union.

None of the cases applying the provisions of the Act, which limit a union's representation to one particular unit,[8] deal with the situation where the repre-

---

satisfactory with the union, provided the Burlington and Bessemer contracts were dated that same date."

6. See 8(d) of the Act, 29 U.S.C.A. § 158 (d); National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 348, 349, 78 S.Ct. 718, 2 L.Ed.2d 823.

7. International Brotherhood of Electrical Workers (Texlite), 119 N.L.R.B. 1792, enf'd per curiam National Labor Relations Board v. International Brotherhood of Electrical Workers, 266 F.2d 349 (C.A.5); Painters Union (Cheatham Painting Company) 126 N.L.R.B. 997; International Union of Electrical, etc. Workers v. N. L. R. B., 3 Cir., 1959,

273 F.2d 243; International Brotherhood of Longshoremen (Chicago Stevedoring), 125 N.L.R.B. 61, enf'd in part National Labor Relations Board v. Local 19, International Brotherhood of Longshoremen, 286 F.2d 661 (C.A.7), Compare, Machinists Local Lodge 1424 v. National Labor Relations Board (Bryan Mfg. Co.), 1960, 362 U.S. 411, 414, n. 3, 80 S.Ct. 822, 4 L.Ed.2d 832, and International Ladies' Garment Workers' Union v. National Labor Relations Board, 1961, 366 U.S. 731, 81 S.Ct. 1603, 6 L. Ed.2d 762.

8. 29 U.S.C.A. § 159(a) and (b), quoted in pertinent part, supra, and cases cited in n. 7, supra.

sentatives of employees in several plant units of the same employer agree on a demand and are concurrently making the same demand in their several negotiations. Nor do any of those cases deal with the situation where the proposal seriously affects the ability of each union to bargain.

In such a situation, as presented by the facts and circumstances of this case, it seems to us that the importance of collective bargaining on questions affecting "wages, hours, and other terms and conditions of employment" overrides the *apparent* expansion of the scope of the bargaining unit. That expansion is more apparent than real, for the very real, hard problem faced by each of the three unions, acting as the exclusive representative of the employees in its unit, is that a common expiration date for all three contracts vitally affects the ability of each union separately to bargain.

Concededly, there is no legal obstacle to the right of the petitioner-employer to insist adamantly that the three contracts continue to expire on different dates. Correspondingly, we think, there is no valid legal reason why each union, with the consent of the other unions, cannot insist just as adamantly that all three contracts expire on some common date. In our opinion, the Board's order, as distinguished from its reasoning, is correct. The petition for review is therefore

Denied.

CARSWELL, District Judge (dissenting).

Because I cannot agree that the action of the Union here was only *apparently* beyond the scope of bargaining units as set forth in 29 U.S.C.A. § 159(a), respectfully I must dissent.

The course of negotiations between the parties, concisely set forth in the Court's opinion, mean to me an unequivocal attempt by one bargaining unit to compel a contract expiration date for other and distinct bargaining units on other contracts as a *condition* of contract between this unit and this employer.

This, basically, is the position petitioner-employer has maintained throughout negotiation, hearing before the Board, and on this appeal. Its quest for answer has been once again without avail. I agree with the Court that the Board based its decision against petitioner-employer on the erroneous assumption that the issue before it could be met by simply reaffirming the unquestioned but irrelevant proposition that contract duration is a bargainable issue. Indeed, as the Court says, there can be no serious legal debate that each unit may insist upon a specific expiration date for *its own contract*, whether or not it be the same date insisted upon by another unit. But the emphasis supplied to this statement points up our basic disagreement. This does not mean to me that a distinct entity, here a bargaining unit deriving legal being from the enactment of the Taft-Hartley Act and having in 29 U.S. C.A. § 159(a) a plain limitation of scope, may inject as a *condition precedent* in the process of negotiation matters with reference to other units and involving other contracts.

As stated by the Supreme Court in National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823:

> "The company's good faith has met the requirements of the statute as to the subjects of mandatory bargaining. But that good faith does not license the employer to refuse to enter into agreements on the ground that they do not include some proposal which is not a mandatory subject of bargaining. We agree with the Board that such conduct is, in substance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining. This does not mean that bargaining is to be confined to the statutory subjects. Each of the two controversial clauses is lawful in itself. Each would be enforceable if agreed to by the unions. But it does not

follow that, because the company may propose these causes, it can lawfully insist upon them as a condition to any agreement."

Among the salutary purposes sought by the enactment of the Taft-Hartley amendments was a refinement of stated rules to delineate the employee-employer relationships not the least of which was to make the compulsory negotiation process itself subject to some standard of relevancy to the vital issues between conferees. In the first decision by the Supreme Court under the progenitor Wagner Act it was stated:

"The theory of the act is that free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements which the act in itself does not attempt to compel." National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893.

"Wages, hours, and other forms and conditions of employment" are made mandatory subjects of negotiation. 29 U.S.C.A. § 158(d). The area of permissive negotiation is much more broad and by *consent* of the parties may be expanded to include many things including common expiration dates on other contracts with other units as sought by the Union here. But such is not this case.

It is not a specific date, as such, which is the subject of controversy here, but a demand by separate bargaining units, having no authority to bargain for each other, as condition precedent to an agreement for all. The Court here finds that the common expiration date "vitally affects the ability of each union separately to bargain," stating that the separate unions face a "very real, hard problem" in this regard. Its preoccupation and concern with the respective difficulties of the parties at bargaining have fashioned, it seems to me, a new miscroscope of legal detection to see that which is and that which is not apparently visible in the Congressional language of 29 U.S.C.A.

§ 159(a). As I see it, this so extends and confuses the separability of unit duties and responsibilities as to enshroud the process with additional problems, which new problems themselves might just as logically be made the justification for even more expansion. Does not this mean, for example, that like demand can be made for industry-wide wages and hours by units of heretofore limited scope or that employer demand as condition to agreement same wages as paid to other units?

Industry-wide or plant-wide bargaining may well be desirable for one or the other party, or for both, but this determination can be made by the Board upon application under 29 U.S.C.A. § 159(b) for expansion of the certified bargaining unit, reference to which is made in the Court's opinion. The problems of negotiation asserted by the bargaining unit here are made by the Court the justification for an expansion of unit authority. These contentions are more properly for consideration of the Board under Section 159(b), supra, for plant-wide certification to remove the unit, or all of them, from an inequitable situation, if, indeed, the facts there developed require this result. Under the holding here the Court, in effect, is approving joint negotiation without consent of the parties and without plenary proceedings before the Board for determination of the need or desirability of such joint negotiation.

Moreover, the Union's claim that its demand for common expiration date was precipitated and made necessary by the action of the company in shifting its operations between (its three) plants should and could more properly have been the subject of a complaint for unfair labor practice under 29 U.S.C.A. § 158 (b) (3). See also National Labor Relations Board v. Hopwood Retinning Co., Inc. et al., 98 F.2d 97 (2nd Cir. 1938); United Steelworkers of America (AFL-CIO), Local Union No. 4264 v. New Park Mining Company, 273 F.2d 352 (10th Cir. 1959); National Labor Relations Board v. Alamo White Truck Service, Inc., 273 F.2d 238 (5th Cir. 1959).

Thus the Union was not without clear and appropriate recourse to seek directly joint bargaining by broadened certification or by bringing the petitioner-employer before the Board for a full hearing on the merits of its complaint that its shifting work must cease and desist as an unfair labor practice under Section 8(b) (3). Instead, the motivation of the Union in this case has been made the basis of the Court's opinion denying petitioner-employer hearing on either proposition and this despite the fact that petitioner-employer's query as to whether or not each unit must bargain for itself has not been directly answered by the trial examiner, the Board or the Court.

With great deference for the views of the majority, for the foregoing reasons I would answer petitioner-employer here by holding the action of the bargaining unit a refusal to bargain in good faith. I must, therefore, respectfully dissent.