**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROTHERHOOD OF PAINTERS, DECORATORS, AND PAPERHANGERS OF AMERICA, GLAZIERS LOCAL UNION NO. 1385, AFL–CIO, Respondent.**

**No. 14487.**

United States Court of Appeals Seventh Circuit.

June 30, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, George B. Driesen, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Lee M. Modjeska, Atty., N. L. R. B., Washington, D. C., for petitioner.

Sydney L. Berger, Evansville, Ind., for respondent.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended (29 U.S.C.A. § 160(e)) for enforcement of the Board's order issued against the Union.[1] The Board's decision and order are reported at 143 NLRB No. 72.

The Board found that the Union violated Section 8(b) (3) of the Act[2] by refusing to sign a written collective bargaining agreement containing the provisions upon which the Union and the employers[3] involved had agreed. The Board ordered the Union to cease and desist from refusing to bargain collectively in good faith by refusing to sign the agreement, or from engaging in any like or related conduct in derogation of its statutory duty to bargain; to bargain with the employers on request and embody any understanding reached in a signed agreement; to execute, if requested, the contract on which agreement was reached on or about April 10, 1962; and to post designated notices.

1. Brotherhood of Painters, Decorators and Paperhangers of America, Glaziers Local Union No. 1385, AFL-CIO.

2. All references herein to the "Act" are to the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq.

3. Central Glass Company, Evansville, Indiana; Stearns and Sadler Glass Company, Harrisburg, Illinois; and Red Spot Paint and Varnish Company, Glass Division, Evansville, Indiana, referred to herein as "employers".

The record discloses that the written agreement prepared for execution following a series of negotiation meetings between representatives of the Union and the employers contained a provision requiring the employers to make contributions to the Tri-State Construction Advancement Program (Tri-Scap), an industry promotional fund and program administered by trustees appointed by employers and not involving control or participation by the Union.

The Union refused to sign the agreement and contends, in substance, that it did not in fact agree to the Tri-Scap provision; that inclusion of the provision would be illegal; and that the Union membership had not ratified the agreement as required by the Union constitution. It further asserts that the cause is moot because the written agreement which the Board's order would compel the Union to execute has expired and because the Union is currently bargaining with the employers.

■ An examination of the record before us, considered as a whole, in the light of the guiding principles furnished by Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, convinces us that there is substantial evidence which amply supports the Board's finding and conclusion that the Union and the employers, through their respective representatives, had in the meetings culminating with the April 10, 1962, meeting, reached agreement on all of the terms of a collective bargaining contract, including the inclusion of the Tri-Scap provision, and all that remained was the drafting and execution of the formal written contract. We are not impressed with the Union's contention that membership ratification was an additional prerequisite. The representations made by the Union's president and negotiation representative, Carl Smiddy, and the history of the 30 years of contract negotiation and execution between the parties, are inconsistent with the Union's belated resurrection and reliance on the long dormant provision of its constitution.

■■ There is nothing in the collective bargaining contract agreed to which calls for Union participation in the administration of the industry promotion program or fund. Cases such as Sheet Metal Contractors Association v. Sheet Metal Workers International Association, 9 Cir., 248 F.2d 307; Plumbing & Pipe Fitting Labor-Management Relations Trust v. Conditioned Air & Refrigeration Co., 9 Cir., 253 F.2d 427; Mechanical Contractors Association v. Local Union 420, 3 Cir., 265 F.2d 607; and Local No. 2 of Operative Plasterers and Cement Masons International Association v. Paramount Plastering, Inc., 9 Cir., 310 F.2d 179, relied upon by the Union, are therefore inapplicable. Nor does the contract call for any other illegal activity on the Union's part. N. L. R. B. v. Detroit Resilient Floor Decorators Local Union 2265, 6 Cir., 317 F.2d 269; United Association of Journeymen, Local 525, and Federated Employers of Nevada, Inc., 135 NLRB 462; and Metropolitan District Council of Philadelphia and McCloskey and Co., 137 NLRB 1583, are not apposite here. That the employers' representative was anxious to have the Tri-Scap clause in the Union contract for its effect as an aid to the collection of contributions from employers who might otherwise fail to make such payments did not make the Union's agreement to its inclusion an illegal act. In any event, the employers' motives in requesting the insertion of the clause are not attributable to the Union—and by the provision the Union did not agree to engage in any illegal activity.

On the record before it the Board did not err in finding and concluding that the parties had agreed on the terms of the contract, including the Tri-Scap provision, and that the Union's refusal to execute the formal contract document embodying the agreement constituted an unfair labor practice. H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 526, 61 S.Ct. 320, 85 L.Ed. 309.

■ By its express terms the collective bargaining agreement was "effective and binding * * * until the 1st day

of April 1962", a date now passed. A provision for automatic renewal for additional one-year periods has been rendered inoperative by notice given in conformity therewith. In its brief in opposition to the Union's motion for dismissal of the enforcement petition on the ground of mootness [4] the Board recognized the pertinency of N. L. R. B. v. Local 19, International Brotherhood of Longshoremen, 7 Cir., 286 F.2d 661, where this Court deleted, on the ground of mootness, that portion of the Board's order directing execution of a specific contract, where the contract had by its terms expired at the time of the Court's decision. Paragraph 2(b) of the Board's order, which directs execution of the written contract embodying the agreement reached in April 1962, is moot and will not be enforced. But the Union's conduct in refusing to execute the contract it had agreed upon did constitute an unfair labor practice and furnishes a basis for the remaining portions of the Board's order. The remaining portions have not been mooted by expiration of the contract period, and the Board is entitled to have them enforced. Cf. Local 74, United Brotherhood of Carpenters, etc. v. N. L. R. B., 341 U.S. 707, 715, 71 S.Ct. 966, 95 L.Ed. 1309 and N. L. R. B. v. Local 19, supra. Nor is the Union's plea of compliance [5] a bar to enforcement. N. L. R. B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067; N. L. R. B. v. Chauffeurs, Teamsters & Helpers Local No. 364, 7 Cir., 274 F.2d 19, 25.

The Board's order as modified by the deletion of paragraph 2(b) and the amendment of paragraph 1 and the prescribed notices, accordingly, will be enforced.

Enforcement of order as modified ordered.

SWYGERT, Circuit Judge (concurring).

I concur reluctantly. For all practical purposes this case is moot; academically, perhaps not. That part of the Board's order which we are affirming can have little, if any, effect on the relationship between the union and the employers. My reluctance stems from the history of the administrative proceeding that preceded the Board's request for enforcement of its order.

The complaint charged the union violated section 8(b) (3) of the act during April and May 1962, by refusing to sign the agreement negotiated by representatives of the union and the employers. The charge was filed with the Board in May 1962. On October 19, 1962, the complaint was issued. The hearing before the trial examiner occurred in December 1962. On February 7, 1963, he issued his intermediate report. The Board rendered its decision July 18, 1963. The Board's petition for enforcement of its order was not filed until January 1964. The last brief in this court was filed April 24, 1964.

In the meantime, on April 1, 1964, the term of the unexecuted contract ended. Its execution now would be meaningless. The dispute has been resolved not by administrative and judicial process but by lapse of time. We are asked to settle a controversy that has become moribund because of delays in the administrative procedure.

---

4. The motion of the Union to dismiss was denied by an order entered in this proceeding February 19, 1964.

5. The Union represents that it is now actively engaged in collective bargaining with the employers involved for the purpose of reaching an agreement, and intends to sign the same.