410 F.2d 1344
 71 L.R.R.M. (BNA) 2311
 GENERAL TRUCK DRIVERS, CHAUFFEURS WAREHOUSEMEN & HELPERS OF
AMERICA, LOCAL NO. 5, Petitioner-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Petitioner, and
Union Tank Car Company, Intervenor.
UNION TANK CAR COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 26337, 26451 Summary Calendar.
 United States Court of Appeals Fifth Circuit.
 May 15, 1969.
 
 William C. Bradley, Baker, La., for petitioner.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., John F. LeBus, Director, Region 15, N.L.R.B., New Orleans, La., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Richard S. Rodin, Baruch A. Fellner, Attys., N.L.R.B., for respondent.
 Andrew C. Partee, Jr., Kullman, Lang, Keenan, Inman & Bee, New Orleans, La., for Union Tank Car Co.
 Before BROWN, Chief Judge, THORNBERRY and MORGAN, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 These are consolidated union unfair labor practice cases brought before the Court on petitions for review filed by both the Union, General Truck Drivers, Chauffeurs, Warehousemen and Helpers of America, Local No. 5, and the Company, Union Tank Car Company, and on cross-application of the Board to enforce its order.[1] In No. 26,337 the Board found that the Union violated Section 8(b) (1)(A) of the Act by threatening employees with bodily harm in order to force them to strike at the Company's plant.[2] The Board based this finding on the following evidence.
 
 
 2
 On May 1, 1967, Emile Verbois, the Union's assistant business manager and shop steward in the Company's Baton Rouge plant, was discharged. Within minutes of his discharge, Verbois walked to the company lunchroom and notified the employees that they 'had to walk out' because he had just been fired. When several of the employees hesitated to walk out, Verbois warned that they had better if they knew what was good for them. Verbois then grabbed a work torch from an employee and ordered him to leave the plant. When another employee indicated that he would follow the majority, Verbois said, 'I will get you all out one way or the other.' These threats were reinforced by employee Musson, who said to Verbois in the presence of other employees that 'if they don't want to go out * * * we will get them as they come out the gate. We will mash their heads down if that's what it takes.' Verbois did not disavow Musson's statement and within minutes all hourly employees walked out of the plant.
 
 
 3
 The Union contends that it was not responsible for the actions of Verbois in forcing the employees out on strike. The record reveals, however, that Verbois was the assistant business agent of the Union and, prior to his discharge, the Union's job steward in the plant. He had been the only signatory in behalf of the Union on the last collective bargaining agreement with the Company and was assigned to conduct negotiations for the Union when discussions on a new contract began in June. It is clear therefore that Verbois was acting as an agent for the Union and, as such, bound the Union to his conduct. See Local 349, International Bro. of Electrical Workers v. NLRB, 1965, 123 U.S.App.D.C. 119, 357 F.2d 579, 580; NLRB v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council, United Bro. of Carpenters, etc., 6th Cir. 1964, 338 F.2d 958, 959. Accordingly, we conclude that substantial evidence on the record as a whole supports the Board's finding that the Union, through its agent Verbois, violated Section 8(b)(1)(A) by coercing the employees into striking.
 
 
 4
 No. 26,451 arises out of a meeting of the striking employees convened on May 15, 1967 by the Union's business agent, Edward Partin. Partin began the meeting by stating that he understood some of the men were talking with J. D. Albin, the union representative of Local 270, a rival union of Local 5. Partin later testified that he knew Albin was mounting a drive to organize the employees of the Company and had been meeting with them. Partin then said that he had some men out looking for Albin and that they were going to 'jerk his head off.' Partin also referred to an employee who was 'in cahoots' with Albin in his efforts to replace Local 5 with Local 270. He then sent a man into the next room to fetch a paper bag. From the bag, Partin withdrew a revolver and a carbine and stated that 'these are items that I use to protect myself with.'
 
 
 5
 During the course of the meeting, Partin asserted that the current strike was illegal and not sanctioned by the Union. When asked why he did not remove the pickets, he explained that since the Union's name was not on the picket sign he had no authority to order that the picketing cease. Partin was then asked whether the employees could cross the picket line in view of the illegality of the strike. He responded: 'If you get that yellow streak from behind your back, you might can cross it.'
 
 
 6
 Upon the foregoing facts, the Board found, contrary to the findings of the trial examiner,[3] that 'there is insufficient basis in the record for concluding that Partin called the May 15 meeting to stop, by means of threats of physical harm, a back-to-work movement, or that (the Union) at that meeting threatened, by word or deed, the employees of the Employer in violation of Section 8(b)(1)(A).' Accordingly, the Board dismissed the unfair labor practice complaint against the Union as it related to this incident. The Company in its petition for review contends that the Board's finding is not supported by substantial evidence on the record as a whole.
 
 
 7
 We agree with the Company. There were two issues before the employees when they met on May 15: (1) whether or not to continue the strike, and (2) whether or not to join with Albin and replace Local 5 with Local 270 as the collective bargaining representative. Inasmuch as Partin disavowed the pickets at the plant, and told the men, albeit in rather rough language, that they were free to cross the picket line and return to work, the Board's finding that the Union did not unlawfully restrain the back-to-work movement finds support in the record. But it is clear that Partin's threatening gestures and remarks were calculated to coerce and restrain the employees in the exercise of their right to assist or join the rival local. It is immaterial that the employees, despite Partin's conduct, subsequently transferred their allegiance to Local 270. 'It is hardly open to question that threats, intimidation and coercion do not escape the pale of an unfair labor practice because they were not executed or that they did not have the expected or desired result.' Progressive Mine Workers v. NLRB, 7th Cir. 1951, 187 F.2d 298, 301.
 
 
 8
 The Board takes the position that Partin's display of guns and his threats directed at Albin related solely to a 'personal feud' between Partin and Albin and were not designed to coerce allegiance to the Union. The feud occurred, however, within the context of a rivalry between the two locals for the support of the employees. Partin knew that Albin was mounting a drive to organize the employees and began the meeting by stating that he understood some of the men had been talking with Albin. Viewed within this context, it is unreasonable to assume that the employees could distinguish Partin's 'personal feud' with Albin from the rivalry between the two locals and that Partin's conduct did not restrain the employees in the exercise of the statutory right to choose their bargaining representative. We hold that the evidence supports no other conclusion than that the Union violated Section 8(b)(1)(A) by Partin's display of guns and statements made for the purpose of intimidating the employees into not joining or lending assistance to Local 270.
 
 
 9
 The Company urges this Court to modify the Board's order to remedy this additional violation. We think, however, that the Board is better equipped to formulate an appropriate order. Accordingly, enforcement of the order is withheld pending remand to the Board for modification of the order to encompass the Union's violation of the Act at the May 15 meeting. When the Board issues a modified order as a result of such proceedings, the order shall be made a part of the pending record for our final action and decree. NLRB v. Great Atlantic and Pacific Tea Co., 5th Cir. 1969, 409 F.2d 296, p. 299; NLRB v. Acme Air Appliance, Inc., 2d Cir. 1941, 117 F.2d 417, 423.
 
 
 10
 Remanded.
 
 
 
 [1]
 Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5th Cir. 1969, 409 F.2d 804, Part I
 
 
 [2]
 Section 8(b)(1)(A) of the National Labor Relations Act, as amended, 29 U.S.C. 158(b)(1)(A) provides: 'It shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in section 7 * * *.'
 Section 7, 29 U.S.C. 157, provides: 'Employees shall have the right to self-organization, to form, join or assist labor organization, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).'
 
 
 [3]
 We emphasize that the disagreement between the Board and the trial examiner did not enter into our decision on this issue. The Supreme Court has recognized that 'evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witness and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion.' Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456. In this case, despite the Company's contentions to the contrary, the Board did not disturb the trial examiner's underlying credibility findings but, instead, drew different inferences from the testimony credited by the examiner. Accordingly, 'it is of little, if any, consequence that the trial examiner was in a better position than the Board to evaluate the testimony of witnesses.' International Union of Electrical, Radio and Machine Workers, AFLCIO v. NLRB, 3d Cir. 1959, 273 F.2d 243, 247; accord, NLRB v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135, 7th Cir. 1954, 212 F.2d 216, 217